UNITED STATES, Appellee

v.

Alaa E. ALBAAJ, Sergeant
U.S. Army, Appellant

No. 07-0002

Crim. App. No. 20000121

United States Court of Appeals for the Armed Forces

Argued April 25, 2007

Decided June 21, 2007

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

### Counsel

For Appellant:  Major Scott T. Ayers (argued); Lieutenant
Colonel Steven C. Henricks and Major Tyesha E. Lowery (on
brief); Colonel John T. Phelps II, Major Billy B. Ruhling II,
and Captain Fansu Ku.

For Appellee:  Captain Trevor B. A. Nelson (argued); Lieutenant
Colonel Michele B. Shields and Major Paul T. Cygnarowicz (on
brief); Colonel John W. Miller II and Lieutenant Colonel Kevin
Boyle.

Military Judge:  Patrick J. Parrish


**This opinion is subject to revision before final publication.**

United States v. Albaaj, No. 07-0002/AR

Judge ERDMANN delivered the opinion of the court.

Sergeant Alaa Albaaj was convicted by a general court-martial with members of disobeying lawful orders, maltreatment, making a false official statement, sodomy, assault with a means likely to produce death or grievous bodily harm, and indecent acts. He was sentenced to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence.

In response to a petition for a new trial based on allegations of juror misconduct, the United States Army Court of Criminal Appeals ordered an evidentiary hearing.[1] United States v. Albaaj, No. ARMY 20000121 (A. Ct. Crim. App. Aug. 19, 2004). Based on the results of that hearing the Court of Criminal Appeals denied the petition for new trial and affirmed the findings and sentence. United States v. Albaaj, No. ARMY 20000121 (A. Ct. Crim. App. Aug. 1, 2006).

The Supreme Court has noted that a touchstone of a fair trial is an impartial trier of fact:

> Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges.

---

[1] See United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

2

United States v. Albaaj, No. 07-0002/AR

> The necessity of truthful answers by prospective
> jurors if this process is to serve its purpose is
> obvious.

McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984). "Where a potential member is not forthcoming . . . the process may well be burdened intolerably." United States v. Mack, 41 M.J. 51, 54 (C.M.A. 1994).

We granted review to determine whether Albaaj's right to trial by a panel of fair and impartial members was violated when a panel member failed to disclose that he knew Albaaj's brother, who was a defense witness on both the merits and sentencing.[2] We conclude the member's failure to disclose his relationship with Albaaj's brother, Emad, constitutes juror misconduct. When viewed objectively, the circumstances of the relationship combined with the member's failure to disclose it to the military judge injure the perception of fairness in the military justice system. Most members in the same position would be prejudiced or biased. The decision of the Court of Criminal Appeals is therefore reversed.

---

[2] We granted review of the following issue:

> WHETHER APPELLANT'S CONSTITUTIONAL AND REGULATORY RIGHT TO
> A FAIR AND IMPARTIAL PANEL WAS VIOLATED BY THE MISCONDUCT
> OF A PANEL MEMBER.

64 M.J. 402 (C.A.A.F. 2007).

## Background

One of the venire members assembled for Albaaj's court-martial was Major Melcher, now Lieutenant Colonel Melcher (retired), the Executive Officer for the Director of Information Management (DOIM) at Fort Carson, Colorado. During preliminary instructions, the military judge directed the members that "if you know of any matter which you believe may affect your impartiality to sit as a court member, you must disclose that when asked to do so." The members were advised that the grounds for challenge included "any . . . matter that may affect your impartiality."

After the members examined the charges, they were asked whether "any member of the court is aware of any matter which he or she believes may be a ground for challenge by either side." None of the members responded. The military judge specifically asked: "Does anyone know anyone named, Emad, in any of the specifications?" There was a negative response from each member, including Melcher. At the conclusion of voir dire, there was a challenge by the defense to a single enlisted member, which was granted by the military judge. Neither party exercised a peremptory challenge. The court-martial panel ultimately consisted of nine members, including Melcher.

As part of its case-in-chief, the defense called Albaaj's brother, Emad Albaaj, as a witness. From 1998 to 2000, Emad was

the information management officer for the Range Control Division and was also the functional manager for the Range Facility Management Support System[3] (RFMSS) at Fort Carson. The DOIM, for which Melcher was the executive officer, provided the server and connections that supported RFMSS. Emad's testimony on the merits spans twenty-one pages of the record of trial. He was recalled briefly during sentencing as a defense witness in extenuation and mitigation. Although Melcher had prior work-related contact with Emad, he did not reveal that fact to the military judge even after he recognized Emad during the trial.

In his post-trial submissions to the convening authority, Albaaj raised an issue of court member misconduct. He alleged that Melcher had failed to honestly answer a material question on voir dire and that because Melcher and Emad had an "extremely antagonistic relationship" there were "substantial doubt[s] as to the legality, fairness and impartiality of the proceedings." Attached to the petition for clemency were a number of e-mails authored by Melcher reflecting his work relationship with Emad. The messages included statements by Melcher that were critical of Emad and questioned his honesty. The convening authority granted no relief for this claim of error.

---

[3] The RFMSS is an automated system that controls the ranges, schedules ranges, controls the live fire, and deconflicts live training to ensure the safety of soldiers.

Before the Court of Criminal Appeals, Albaaj again raised the issue of court member misconduct. He also filed a petition for new trial under Article 73, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 873 (2000), claiming fraud on the court because Melcher failed to disclose his prior relationship with Emad. In response to the petition for new trial, the lower court ordered a post-trial DuBay hearing to inquire into the allegation of court member misconduct and directed that the military judge make findings of fact and conclusions of law on that issue.[4]

Both Melcher and Emad testified at the DuBay hearing. The testimony confirmed that during mid to late 1999, Melcher and Emad had professional contact concerning the administration of computer servers and systems that supported the Range Control Division operations. The testimony established that Melcher developed negative impressions of Emad during this time. A degree of acrimony was reflected in e-mail from Melcher suggesting that Emad was "trash[ing] the DOIM," that Emad "had his facts wrong," and that Emad's communications outside Fort Carson were "BS" that had a negative impact. In general, Melcher believed that Emad had misrepresented facts and had "a personal agenda which is not based on the fact[s] or truth."

---

[4] "[A]n evidentiary hearing is the appropriate forum to develop the full circumstances" surrounding such allegations of court

6

United States v. Albaaj, No. 07-0002/AR

However, Melcher testified that over time he had occasion to reevaluate Emad's opinions and indicated that before Albaaj's trial, he had developed a favorable opinion of Emad.  After considering the evidence presented at the DuBay hearing the military judge concluded that Melcher "did not fail to honestly answer a material question on voir dire" and that Melcher did not fail to later disclose his knowledge of Emad in bad faith.  Finally, the military judge concluded that there was no basis upon which to challenge Melcher for cause either for actual or for implied bias.

## Discussion

We expect complete candor from court members during voir dire.  United States v. Modesto, 43 M.J. 315, 318 (C.A.A.F. 1995).  Anything less undermines the purpose of the member selection process at trial and, in turn, potentially deprives an accused of an impartial determination of guilt and a fair trial.  See Mack, 41 M.J. at 54 ("this Court consistently has required member honesty during voir dire"); United States v. Lake, 36 M.J. 317, 323 (C.M.A. 1993) (the court will not "condone such reticence by . . . members"); United States v. Rosser, 6 M.J. 267, 273 (C.M.A. 1979) ("No premium will be paid in the military justice system for lack of candor on the part of its members"),

---

member misconduct.  United States v. Mack, 41 M.J. at 55-56; United States v. Humpherys, 57 M.J. 83, 96 (C.A.A.F. 2002).

7

United States v. Albaaj, No. 07-0002/AR

abrogated on other grounds by United States v. Biagase, 50 M.J. 143, 151 (C.A.A.F. 1999).

In Mack, we adopted the two-pronged test articulated by the Supreme Court in McDonough for determining whether a new trial is warranted when there is an allegation that a juror failed to disclose information during voir dire:  "'[A] party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.'"  41 M.J. at 55 (quoting McDonough, 464 U.S. at 556); see also United States v. Ruiz, 49 M.J. 340, 346 (C.A.A.F. 1998).

We agree with the military judge's conclusion that:  "If a court member learns of information during the trial which makes an earlier response to a voir dire question inaccurate, the member should so advise the court."  The duty of candor does not stop at the end of voir dire but is an obligation that continues through the duration of the trial.  It makes no difference whether the member knew during voir dire that his response to a question was incorrect or whether he later realized, or reasonably should have realized, that his initial response was incorrect -- the duty to honestly inform the court is the same.

We need not address whether Melcher's response during voir dire that he did not know anyone named "Emad" was a "failure to

United States v. Albaaj, No. 07-0002/AR

answer honestly" under McDonough.  The first prong of the
McDonough test in this circumstance is whether the member failed
to honestly inform the military judge that his earlier response
to a material voir dire question was incorrect.  The military
judge's preliminary question put Melcher on notice that someone
named "Emad" was involved in the trial and that knowledge of
that individual was of some importance to the selection of the
court-martial panel.  When Emad entered the courtroom to
testify, Melcher recognized him and realized that he knew him
from their work relationship.  At that point it was, or should
have been, clear to Melcher that his previous answer to the
military judge's question about whether anyone knew "Emad" was
incorrect.

While the DuBay military judge found that Melcher's "lack
of disclosure was not done in bad faith," that is not the proper
inquiry.  A panel member is not the judge of his own
qualifications.  See R.C.M. 801(a)(4) (the military judge rules
on "all questions of law raised during the court-martial");
R.C.M. 912(f)(3) ("The military judge shall rule finally on each
challenge.").  The duty to disclose cannot be dependent upon the
court member's own evaluation of either the importance of the
information or his ability to sit in judgment.  Just as honest
disclosure must be made in response to direct questions on voir
dire, honest disclosures must be made throughout the trial

9

United States v. Albaaj, No. 07-0002/AR

"regardless of [the members'] own belief as to their ability to sit as court members."  Rosser, 6 M.J. at 273.[5]  When Emad took the witness stand, Melcher either was or should have been aware that his initial response to the military judge's question concerning Emad was incorrect.  We conclude that by failing to correct the misinformation he had given during voir dire, Melcher violated his duty of candor.

The first prong of the McDonough test also requires that the question be "material," which is defined as "[h]aving some logical connection with the consequential facts . . . [or] [o]f such a nature that knowledge of the item would affect a person's decision-making."  Black's Law Dictionary 998 (8th ed. 2004).  There can be no doubt that a question as to a potential member's knowledge of a witness is "material" to a defendant's right to expose potential biases in order to ensure an impartial jury.

As a result of Melcher's nondisclosure, Albaaj's defense counsel was unaware of the relationship between Melcher and Emad during the trial when he could have made further inquiry into the nature of the relationship.  As a result of that inquiry he could have moved for a mistrial or asked that Melcher be removed from the panel prior to deliberations, either for cause or on

---

[5] Although Rosser predicated this conclusion on paragraph 62.b., Manual for Courts-Martial, United States (1969 rev. ed.), it is no less applicable to R.C.M. 912.  See Manual for Courts-Martial, United States, Analysis of the Rules for Courts-Martial

United States v. Albaaj, No. 07-0002/AR

the basis that he would have exercised his peremptory challenge against Melcher had he been aware of the relationship. Therefore, we conclude that Melcher failed to disclose information that was material to the conduct of a fair and impartial trial.

The second prong of the McDonough test is whether the correct response to the question would have provided a valid basis for a challenge. Albaaj urges that Melcher's prior undisclosed relationship with Emad constitutes bias under R.C.M. 912(f)(1)(N) and therefore establishes a basis for a valid challenge for cause. Challenges under R.C.M. 912(f)(1)(N) encompass both actual and implied bias. United States v. Briggs, 64 M.J. 285, 286 (C.A.A.F. 2007) (citing United States v. Strand, 59 M.J. 455, 458 (C.A.A.F. 2004)). These are "separate legal tests, not separate grounds for challenge." United States v. Armstrong, 54 M.J. 51, 53 (C.A.A.F. 2000).

In the case of actual bias, we are generally deferential to a military judge's ruling because such challenges "involve[] judgments regarding credibility, and because 'the military judge has an opportunity to observe the demeanor of court members and assess their credibility during voir dire.'" United States v. Clay, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting United States v. Daulton, 45 M.J. 212, 217 (C.A.A.F. 1996)).

app. 21 at A21-61 (2005 ed.), indicating that the Rule and its

11

United States v. Albaaj, No. 07-0002/AR

"[T]he test for implied bias is objective, and asks whether, in the eyes of the public, the challenged member's circumstances do injury to the 'perception of appearance of fairness in the military justice system.'" United States v. Terry, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting United States v. Moreno, 63 M.J. 129, 134 (C.A.A.F. 2006)). In making this objective evaluation, we ask whether most members in the same position as Melcher would be prejudiced or biased. Id. (quoting Strand, 59 M.J. at 459). Because of this objective test and the nature of the inquiries, "'issues of implied bias are reviewed under a standard less deferential than abuse of discretion but more deferential than de novo.'" Strand, 59 M.J. at 458 (quoting United States v. Miles, 58 M.J. 192, 195 (C.A.A.F. 2003)). As we decide the issue of bias under R.C.M. 912(f)(1)(N) on the basis of implied bias, there is no need for the court to address the issue of actual bias in this case.

The evidence from the DuBay hearing reflects that throughout the summer of 1999 and continuing as late as the end of October 1999, Melcher evidenced a marked hostility toward Emad. The e-mails reflect both that Melcher was unhappy with aspects of Emad's conduct and that he questioned Emad's honesty. Viewed objectively, the e-mail correspondence reveals that Melcher thought very little of Emad either professionally or

discussion are based upon paragraph 62.b.

12

personally. However, at the DuBay hearing Melcher claimed that sometime between his last e-mail on October 29, 1999, and the court-martial on February 9, 2000, he had gained a new-found appreciation for Emad's work and a new appreciation for Emad's character.

Despite the member's asserted change in his personal evaluation of Emad, the record clearly established that Melcher was openly antagonistic toward Emad and questioned his honesty as recently as fifteen weeks before the court-martial. Not only was the relationship between Melcher and Emad uncertain in tone, where we are dealing with a witness who is a brother of the accused, there is a risk that the member might impart their feelings about the witness to the accused. Those factors, when combined with Melcher's subsequent failure to disclose the relationship even after he realized his earlier response was incorrect, raises concerns about the impartiality of this member and the resultant fairness of the proceeding. A reasonable public observer of this trial would conclude that Melcher's actions injured the perception of fairness in the military justice system. Albaaj has therefore established implied bias which is a valid basis for challenge of Major Melcher and has satisfied both prongs of the McDonough test.

## Decision

The decision of the United States Army Court of Criminal Appeals is reversed.  The findings and sentence are set aside. A rehearing is authorized.