*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Jason M. COMMISSO, Sergeant First Class**
United States Army, Appellant

**No. 16-0555**
Crim. App. No. 20140205

Argued December 6, 2016—Decided June 26, 2017

Military Judges: Jeffery D. Lippert and David L. Conn

For Appellant: *Captain Joshua G. Grubaugh* (argued); *Eugene R. Fidell,* Esq. (on brief); *Captain J. David Hammond.*

For Appellee: *Captain Tara O'Brien Goble* (argued); *Lieutenant Colonel A. G. Courie III* and *Major Michael E. Korte* (on brief); *Captain Scott L. Goble.*

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN, and Judges STUCKY, OHLSON, and SPARKS, joined.

———————

Judge RYAN delivered the opinion of the Court.

An officer panel sitting as a general court-martial convicted Appellant, contrary to his pleas, of the following: one specification each of violating a lawful general regulation, making a false official statement, indecent viewing of a person's private area, indecent recording of a person's private area, wrongful distribution of a recording of a person's private area, and obstruction of justice, and two specifications of abusive sexual contact, in violation of Articles 92, 107, 120, 120c, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 920, 920c, 934 (2012). The panel sentenced Appellant to a bad-conduct discharge, confinement for one year, forfeiture of all pay and allowances, and reduction to grade E-1. The convening authority approved the findings and sentence as adjudged.

After trial, Appellant discovered that three of the ten panel members who sat on his court-martial panel had regularly attended Sexual Assault Review Board (SARB) meetings, including at least four meetings prior to his court-martial where his case was discussed from the putative victim's perspective. The three members had failed to disclose either their knowledge of the case or their participation in the SARB in response to voir dire questions designed to elicit this material information. This lack of candor during voir dire was discovered from the proverbial horse's mouth: one of the panel members alerted the SARB to his concern that serving on both the SARB and a court-martial panel might threaten the fairness, or the appearance of fairness, of the panel, and he expressed what can most charitably be characterized as negative views about those who serve as defense counsel or who are accused of sexual assaults. Special Victim Prosecutor (SVP) MAJ Jessica Conn relayed this information to Appellant's defense counsel and defense counsel filed a post-trial motion for a mistrial, arguing that these three panel members were not impartial. The military judge held a post-trial Article 39(a), UCMJ, 10 U.S.C. § 839(a) (2012), hearing but denied the motion.

On appeal, the United States Army Court of Criminal Appeals (ACCA) dismissed the guilty findings for the specifications of violating a lawful general regulation and making a false official statement. *United States v. Commisso*, No. ARMY 20140205, 2016 CCA LEXIS 277, at *14–15, 2016 WL 1762059, at *5 (A. Ct. Crim. App. Apr. 29, 2016). The ACCA affirmed the remainder of the findings and sentence as adjudged.[1] *Id.* at *15, 2016 WL 1762059, at *5. We subsequently granted Appellant's petition to review the following issue:

> Whether the military judge abused his discretion in denying the defense's post-trial motion for a mistrial, thereby violating Appellant's right to have his case decided by a panel of fair and impartial mem-

---

[1] Appellant raised the issue of the impartiality of the panel members, but the Court of Criminal Appeals declined to address it.

bers, because three panel members failed to disclose that they had prior knowledge of the case.[2]

While mistrials are disfavored, *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003), under the facts of this case we hold that the military judge abused his discretion in denying Appellant's motion for a mistrial by incorrectly focusing on the subjective intent of the members in failing to disclose material information, *see United States v. Albaaj*, 65 M.J. 167, 170 (C.A.A.F. 2007), and by failing to consider important facts that were relevant to the question whether Appellant had a valid basis for challenging the members for cause. *See United States v. Mack*, 41 M.J. 51, 55 (C.M.A. 1994).

## I. FACTS

Before they were questioned on voir dire, three of the ten members on Appellant's court-martial panel—COL Forsythe, COL Ackermann, and LTC Arcari—regularly attended monthly SARB meetings that discussed pending sexual assault cases. These meetings included all brigade commanders, as well as a sexual assault response coordinator, victim advocate, army criminal investigation command, staff judge advocate, provost marshal, chaplain, sexual assault clinical provider, and other related staff. The purpose of these meetings was to ensure that sexual assault victims received their legal entitlements throughout the court-martial process. The meetings began with a discussion of sexual assault prevention, followed by a review of the details of pending sexual assault cases. SARB members were briefed on the facts of each allegation, including the victim's rank, without identifying the victim by name. These briefings contained only the putative victim's version of the alleged criminal acts.

---

[2] We also granted review to determine whether one of the judges on the CCA panel was constitutionally or statutorily barred from sitting on the panel because of his simultaneous appointment as a judge on the United States Court of Military Commission Review (USCMCR). Because the CCA issued its judgment before the judge's appointment to the USCMCR, that issue is moot. *United States v. Dalmazzi*, 76 M.J. 1, 2 (C.A.A.F. 2016).

These SARB meetings reviewed Appellant's case multiple times. Every time Appellant's case came up for review, a PowerPoint slide described unchallenged accusations by Appellant's alleged victim this way:

> Victim met the accused at physical therapy, and then went to dinner with him. She then agreed to spend the night at his apartment so he would not have to drive her home. After taking some medication and watching TV, victim fell asleep. She awoke to the accused touching her breasts and taking nude photos of her. She then fell asleep again and awoke again in the accused [sic] bed with the accused forcing her to perform oral sex on him. The accused then grabbed her neck and penetrated her vagina with his penis. Victim attempted to fight by scratching the accused with her fingernails, but was too weak from the medication to stop him. The accused admitted to these acts but stated that it was all consensual, and that the scratches were on his body because the victim "liked it rough."

During voir dire, all of the members of Appellant's panel were asked the following questions: (1) "Does anyone have any prior knowledge of the facts or events alleged, in this case?"; (2) "Has anyone heard about any of the facts of this case whatsoever?"; (3) "Are you, a member of your family, or close friend a member of a group or charity that deals with issues of sexual assault [either] in [the] military or in general?"; and, importantly, (4) "Have you ever been a unit victim advocate, a sexual assault response coordinator, or otherwise involved in [the] sexual assault response system?" Notwithstanding their repeated exposure to Appellant's case through their participation in the SARB—an evident part of the sexual assault response system—the three panel members responded negatively to each question. Because of this failure to disclose, the defense counsel had no reason to probe into any potential bias toward sexual assault victims or against the accused arising out of their participation in the SARB or their exposure to the victim's unrebutted allegations against Appellant. Instead, given their negative answers to these questions, defense counsel did not challenge the three members for cause or use his peremptory challenge.

The panel subsequently convicted Appellant. After trial, COL Forsythe unilaterally alerted the SARB to his concern that serving on both the SARB and a court-martial panel might threaten the fairness, or the appearance of fairness, of the panel. SVP MAJ Conn informed defense counsel of COL Forsythe's remarks:

> During the SARB, COL Forsythe expressed concern about how the incident review slides were being presented. He indicated that he had served on court-martial panels, and he was concerned that the incident review slides might "prejudice" him, or words to that effect. He said that it is his role as a panel member to be "objective," or words to that effect. He indicated that when he heard mention of a Marine PFC [at Appellant's court-martial] he recognized the case [from the SARB review slides]. He then indicated that during [Appellant's] court-martial the lawyers ask[ed] the members if they kn[ew] about the case. He then pondered, "Did I lie? Maybe I did. I don't think I did," or words to that effect. . . .

> [COL Forsythe] suggested that the incident review slides should be presented differently because defense counsel are "aggressive" about finding something to remove members from the panel . . . He also stated that sometimes when he is sitting on panels he wants to jump over the bar and punch the guy, or words to that effect.[3] He reiterated that he is objective, and he wants to get the bad guys the correct way, or words to that effect. On several occasions, he expressed his desire to be objective.

According to the acting installation Sexual Assault Response Coordinator (SARC), COL Forsythe also suggested that "he might have felt *a little bit biased* sitting on a court-martial panel *already having some knowledge of the case.*" (Emphasis added.)

Upon discovery of COL Forsythe's participation in the SARB, the defense moved for a mistrial. The military judge held a post-trial Article 39(a), UCMJ, hearing to determine if COL Forsythe, COL Ackermann, and LTC Arcari provided

---

[3] COL Forsythe's comments about wanting to "punch the guy" were not specifically about Appellant's case.

inaccurate answers to questions on voir dire. Defense counsel asked COL Forsythe whether, in his opinion, "the way the SARB meetings were done and the way the information was presented previously . . . had a potential to taint panel members?" COL Forsythe replied:

> It could. It could. . . . In the very next SARB I had to go back and say "Look, you guys need to remove this so there's no potential that the system appears to be slanted one direction or the other. There needs to be no appearance of that. We have to be balanced." I said that in the meeting.

He testified that the SARB meetings were "geared towards the victim" and "all about resourcing the victim's needs following an incident," and that he believed "it was inappropriate to present that information in the SARB if we're going to be fair to both sides." He also testified that he raised his concerns at the SARB meeting after trial because he did not "want the system to be questioned. It's got to be fair for both sides." Nevertheless, COL Forsythe stoutly maintained that he himself was "completely objective" at trial. Neither defense counsel nor the military judge asked COL Forsythe why he concealed his participation in the SARB. Nor was he asked about his intemperate comments regarding those who serve as defense lawyers or who are accused of sexual assault.

COL Ackermann testified that, during the deliberations in Appellant's trial, he remembered reviewing the facts of Appellant's case at the SARB meetings. COL Ackermann also revealed that COL Forsythe spoke to him about the SARB during a break in deliberations. COL Ackermann insisted, however, that he remained impartial during deliberations.

Finally, LTC Arcari testified that, at some point during the trial, COL Forsythe spoke with her about how he remembered Appellant's case from the SARB. At this point she remembered that she had been exposed to Appellant's case by the SARB PowerPoint slides. As with COL Forsythe, neither COL Ackermann nor LTC Arcari were asked why they failed to disclose their SARB membership during voir dire.

Following the Article 39(a), UCMJ, hearing, the military judge found that the evidence was insufficient to show actu-

al bias, and found "no basis to grant an implied bias challenge of any member based on their exposure to information at the SARB attributable to the accused's case." He explained: "A potential member's exposure to such vague information [as that presented at the SARB meetings] could not objectively undermine public confidence in COL Forsythe's or any other member's objectivity as a court member." While he recognized the liberal grant mandate, his findings of fact and conclusions of law failed to consider: (1) any implied bias that might have resulted from the members' participation in the SARB;[4] (2) COL Forsythe's explicitly negative statements at the SARB regarding those who serve as defense counsel and those who are accused of sexual assault; or (3) the cumulative appearance of unfairness resulting from three panel members in these circumstances sitting on the same panel together. Accordingly, the military judge denied defense counsel's motion for a mistrial. The ACCA affirmed the military judge's ruling on the motion without discussion. *Commisso*, 2016 CCA LEXIS 277, at *14–15, 2016 WL 1762059, at *5.

## II. DISCUSSION

"A military judge has discretion to 'declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings.'" *United States v. Coleman*, 72 M.J. 184, 186 (C.A.A.F. 2013) (quoting Rule for Courts-Martial (R.C.M.) 915(a)). A military judge abuses his discretion when: (1) he predicates his ruling on findings of fact that are not supported by the evidence of record; (2) he uses incorrect legal principles; (3) he applies correct legal principles to the facts in a way that is clearly unreasonable, *United States v.*

---

[4] The military judge ventured only a conclusory remark that participation in the SARB did not result in implied bias: "No evidence suggests [COL Forsythe's] involvement in the SARB in any way affected his impartiality." But by evaluating whether participation in the SARB "affected or influenced" the members' view of the evidence, he tested for actual bias, rather than implied bias—whether "the public [would] perceive that the accused received something less than a court of fair, impartial members." *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008).

*Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010), or (4) he fails to consider important facts. *See United States v. Solomon*, 72 M.J. 176, 180–81 (C.A.A.F. 2013).

"As a matter of due process, an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel." *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001) (citing *Mack*, 41 M.J. at 54). "Indeed, '[i]mpartial court-members are a *sine qua non* for a fair court-martial.'" *Id.* (quoting *United States v. Modesto*, 43 M.J. 315, 318 (C.A.A.F. 1995)).

> The right to a trial by an impartial [panel] lies at the very heart of due process. [O]ur common-law heritage, our Constitution, and our experience in applying that Constitution have committed us irrevocably to the position that the criminal trial has one well-defined purpose—to provide a fair and reliable determination of guilt. That purpose simply cannot be achieved if the [panel's] deliberations are tainted by bias or prejudice. Fairness and reliability are assured only if the verdict is based on calm, reasoned evaluation of the evidence presented at trial.

*Smith v. Phillips*, 455 U.S. 209, 224–25 (1982) (Marshall, J., with whom Brennan, J., and Stevens, J., joined, dissenting) (second alteration in original) (internal quotation marks omitted) (citations omitted).

R.C.M. 912(f)(1) requires impartiality on the part of panel members and provides for their removal if their impartiality is jeopardized: "A member shall be excused for cause whenever it appears that the member: . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). Such substantial doubt arises when, "in the eyes of the public, the challenged member's circumstances do injury to the 'perception [or] appearance of fairness in the military justice system.'" *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007) (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006)); *accord United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000) ("The general focus is 'on the perception or appearance of fairness of the military justice system.'" (quoting *United States v. Schlamer*, 52 M.J. 80, 93 (C.A.A.F. 1999))).

Voir dire is a critical tool for ensuring that the accused is tried by an impartial trier of fact—the "touchstone of a fair trial." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984). Voir dire protects an accused's right to an impartial trier of fact "by exposing possible biases, both known and unknown, on the part of potential jurors." *Id.* "The necessity of truthful answers by prospective [members] if this process is to serve its purpose is obvious." *Id.* Although these passages refer to the civilian right to an impartial jury under the Sixth Amendment, they hold equally true with regard to servicemember rights under the Fifth Amendment and the Rules for Courts-Martial. *See Albaaj*, 65 M.J. at 168 (" 'Where a potential member is not forthcoming . . . the process may well be burdened intolerably.' " (alteration in original) (quoting *Mack*, 41 M.J. at 54)). Without honest disclosures during voir dire, an accused is hamstrung in challenging potentially biased members for cause. *See Mack*, 41 M.J. at 54; *see also United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989).

We recognize that not every contretemps during voir dire rises to the level of a constitutionally unfair trial, *see Smith*, 455 U.S. at 217 ("[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation . . . ."), and that "[t]he power to grant a mistrial should be used with great caution, under urgent circumstances, and for plain and obvious reasons." R.C.M. 915(a) Discussion; *see Diaz*, 59 M.J. at 90. Responses to voir dire need not be pristine to satisfy the constitutional minimum of a fair trial, *McDonough Power Equip., Inc.*, 464 U.S. at 555 ("To invalidate the result of a … trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give."), or even R.C.M. 912's requirement that a court-martial appear fair to the observing public. *See United States v. Lake*, 36 M.J. 317, 323 (C.M.A. 1993) ("Although we do not condone such reticence [to answer voir dire questions] by these members . . . they [did not] purposefully disregard[] the judge's questions or disobey[] any other instruction given by the judge in this case.").

Nevertheless, the law is well settled that failure to grant a motion for a mistrial is an abuse of discretion if, had the

members answered material questions honestly at voir dire, defense counsel would have had a valid basis to challenge them for cause. *See Mack*, 41 M.J. at 55 (quoting *McDonough Power Equip., Inc.*, 464 U.S. at 556). We conclude that under this framework, the military judge in this case abused his discretion.

A question is "material" if it has "some logical connection with the consequential facts" of the case, or is "[o]f such a nature that knowledge of the item would affect a person's decision-making." *Albaaj*, 65 M.J. at 170 (alteration in original) (internal quotation marks omitted) (citation omitted). No one disputes that the voir dire questions at issue here were "material." Defense counsel asked the members whether they had "any prior knowledge of the facts or events alleged," had "heard about any of the facts of this case," had been part of a group that "deals with issues of sexual assault," or were "involved in [the] sexual assault response system." The defense counsel probed these subjects to determine whether any of the panel members had prejudged Appellant's case or might be partial toward sexual assault victims or against those accused of sexual assault, attributes that could "affect [their] decision-making" on the panel. *Cf. Albaaj*, 65 M.J. at 170.

Next, a panel member is dishonest when he fails to exhibit "complete candor." *Id.* at 169. The military judge focused on the fact that COL Forsythe "harbored no dishonest or fraudulent intent" when he answered these material questions incorrectly. But the test for member dishonesty is not whether the panel members were willfully malicious or intended to deceive—it is whether they gave objectively correct answers. *Id.* at 170 ("While the *DuBay* military judge found that Melcher's 'lack of disclosure was not done in bad faith,' that is not the proper inquiry."). Moreover, because "[a] panel member is not the judge of his own qualifications," each member must answer fully and correctly on voir dire regardless of his own subjective "evaluation of either the importance of the information or his ability to sit in judgment." *Id.* It is therefore settled law that a panel member has an ongoing duty to advise the court of any answers he or she realizes, or reasonably should have realized, were incorrect or have become incorrect before the close of trial. *See id.*

10

Here, three of the ten panel members gave inaccurate statements during voir dire and failed to correct them during trial. This satisfied the first requirement for a mistrial set forth in *Mack*, and the military judge erred in concluding otherwise.

The final question is whether, had the members answered honestly, their responses "would have provided a valid basis for a challenge for cause." *Mack*, 41 M.J. at 55 (internal quotation marks omitted) (quoting *McDonough Power Equip., Inc.*, 464 U.S. at 556). The purpose of this inquiry is to determine whether a panel member's dishonesty at voir dire "burdened [the court-martial] intolerably" by preventing the accused from exercising a challenge for cause. *Id.* It is the role of the military judge to conduct this analysis in the first instance in a post-trial hearing. *Cf. id.* ("[T]he normal procedure is to remand the issue to the trial court for [a *DuBay* hearing and a] resolution, because appellate tribunals are a poor substitute for trial courts in developing a record or for resolving factual controversies."). We conclude that the post-trial hearing failed to adequately analyze and investigate the panel members' dishonesty and the potential for an implied bias challenge.

Had the members honestly answered the questions at voir dire, Appellant would have had at least a valid basis for challenging one or more of the panel members for cause. Under R.C.M. 912(f)(1)(N), a member "shall be excused" for implied bias "whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." *Wiesen*, 56 M.J. at 174. "Substantial doubt" exists where the presence of a member on the panel would cause the public to think "that the accused received something less than a court of fair, impartial members," injuring the public's perception of the fairness of the military justice system. *See, e.g.*, *Townsend*, 65 M.J. at 463. Had defense counsel known that three of the ten panel members met monthly as part of a one-sided victim advocacy group to discuss pending sexual assault cases and victims' legal rights—including Appellant's case—defense counsel would have undoubtedly probed their views on a variety of areas more deeply. Had he received accurate answers from those

three panel members, defense counsel could have argued that the presence of even one member serving on a SARB—let alone three—raised "substantial doubt[s]" about the perceived impartiality of the military justice system.[5] *Wiesen*, 56 M.J. at 174. Because the panel members' answers were inaccurate, however, defense counsel had no such opportunity at voir dire.

The basic integrity of the court-martial process was undermined even further when the military judge failed to conduct an adequate post-trial hearing to examine the full extent of their lack of candor and to remedy the harm it caused. First, he neglected to consider facts that should have been weighed heavily in resolving the question whether the defense established actual or implied bias. *Cf. Solomon*, 72 M.J. at 180 ("[T]he problem is that the military judge altogether failed to mention or reconcile Appellant's important alibi evidence . . . ."). Second, he failed to adequately investigate the scope and causes of the panel members' failure to accurately answer straightforward questions at voir dire. *Cf. United States v. Baker*, 638 F.2d 198, 201 (10th Cir. 1980) ("[T]he searching rigor of the court's examination must be tailored to fit the circumstances of the case upon which the jurors will sit to ensure that the jurors are competent and impartial.").

First, the military judge failed to consider important facts, contained in the motion for a mistrial, indicating member bias. In neither his conclusions of law nor his findings of fact did the military judge note, let alone analyze the

---

[5] To be clear, we do not hold that participation on a SARB or similar entity, or passing knowledge of the facts of a case, constitutes actual or implied bias. *See Lake*, 36 M.J. at 324 (" '[J]urors need not . . . be totally ignorant of the facts and issues involved' in the case before them." (alteration in original)); *cf. United States v. Wood*, 299 U.S. 123, 149–50 (1936) ("It is said that particular crimes might be of special interest to employees in certain governmental departments, as, for example, the crime of counterfeiting, to employees of the treasury. But . . . such cases of special interest [are] exceptional."). Rather, we require that members be forthcoming in response to voir dire questions so that the defense can conduct a meaningful voir dire, expose known and unknown biases or impartiality, and, where valid, raise contemporaneous challenges for cause.

import of, COL Forsythe's statements regarding those who defend people accused of sexual assault ("He suggested that . . . defense counsel are 'aggressive' about finding something to remove members from the panel, 'like the statements of POTUS,' or words to that effect."), or those accused of sexual assault ("He also stated that sometimes when he is sitting on panels he wants to jump over the bar and punch the guy, or words to that effect."). *Cf. Napolitano*, 53 M.J. at 167 (holding that the military judge did not abuse his discretion by rejecting a challenge for cause against a member who called lawyers "Freelance guns for hire (aka Johnies [sic] Cochran)" because the ensuing dialogue between him and the military judge "reflect[ed] an evolution of [his] thinking on this question"). He also failed to consider the cumulative effect of having three of Appellant's panel members serve on the same panel under a specter of possible bias that they each recognized—and even talked about during trial—but did not disclose. *Cf. United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011) ("[A] number of errors, no one perhaps sufficient to merit reversal, in combination [may] necessitate the disapproval of a finding." (internal quotation marks omitted) (citation omitted)). The cumulative impact of these revelations in voir dire would have given defense counsel an even firmer basis for questioning the fairness and impartiality of the panel and challenging one or all of them for cause.

Second, the military judge did not fulfill his obligation to inquire into potential bias that was raised by defense counsel's motion for a mistrial.[6] *Cf. United States v. Frank*, 901 F.2d 846, 849 (10th Cir. 1990) ("The trial court has the duty in a criminal case to properly voir dire prospective jurors to ensure the [constitutional] guarantee of an impartial jury is met."). In particular, the military judge failed to ask any of the three members why they concealed their SARB member-

---

[6] While in *Albaaj* the case was remanded for a hearing in accordance with *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967), *Albaaj*, 65 M.J. at 168, the post-trial hearing in this case provides adequate information for us to be certain that the military judge abused his discretion in this case.

ship.[7] This is an egregious oversight given the fact that COL Forsythe indicated that the SARB might have biased his judgment, and feared that "aggressive" questioning by defense counsel in voir dire would result in his removal. *Cf. McDonough Power Equip., Inc.*, 464 U.S. at 556 ("The motives for concealing information may vary, but . . . those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial."). These facts suggest at least the possibility of intentional concealment, indicating bias. *Cf. Colombo*, 869 F.2d at 151 ("[T]he juror's intentional nondisclosure . . . . reflected an impermissible partiality on the juror's part."). However, the military judge neglected to ask a basic question—why the members concealed their SARB membership—that may have elicited additional evidence of bias.[8]

We hold that, taken together, the circumstances surrounding COL Forsythe, COL Ackermann, and LTC Arcari might have cast "substantial doubt as to [the] legality, fairness, and impartiality" of Appellant's court-martial, R.C.M. 912(f)(1)(N), and thus "would have provided a valid basis for a challenge for cause." *Mack*, 41 M.J. at 55 (internal quotation marks omitted) (citation omitted). In finding otherwise,

---

[7] Ultimately, the three members were only asked why they failed to disclose their limited prior knowledge of the case, but not why they failed to disclose their membership on the SARB.

[8] Moreover, we note that "[*v*]*oir dire* is a valuable tool . . . . [for] determining how to exercise peremptory challenges." *United States v. Jefferson*, 44 M.J. 312, 318 (C.A.A.F. 1996) (citation omitted); *see also id.* ("Adding peremptory challenges was an expansion of the purpose of *voir dire* from determining impartial jurors to also assisting counsel in exercising this new right."). Dishonesty during voir dire prevents the accused from exercising this important right. *Cf. McCoy v. Goldston*, 652 F.2d 654, 658 (6th Cir. 1981) ("[D]eliberate concealment or purposefully incorrect responses during voir dire suffice to show a prejudicial impairment of the right to the exercise of peremptory challenges."); *see also Swain v. Alabama*, 380 U.S. 202, 219 (1965) (observing that a peremptory challenge is " 'one of the most important of the rights secured to the accused' " (citation omitted)), *overruled on other grounds by Batson v. Kentucky*, 476 U.S. 79 (1986). The military judge's conclusion that Appellant might not have exercised his peremptory challenge in the event that his implied bias challenges failed, defies common sense.

the military judge inappropriately relied on the members' claimed actual impartiality, focused on the members' prior knowledge of the case, ignored salient facts, and misapplied the law. We therefore hold that the military judge abused his discretion by not granting Appellant's motion for a mistrial.

## III. DECISION

The decision of the United States Army Court of Criminal Appeals is reversed. The findings and sentence are set aside, and the record is returned to the Judge Advocate General of the Army with a rehearing authorized.