*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
# FOR THE ARMED FORCES

―――――――――――

## UNITED STATES
Appellee

**v.**

## Juan I. CAMPOS, Sergeant
United States Marine Corps, Appellant

**No. 24-0138**
Crim. App. No. 202200246

Argued December 11, 2024—February 19, 2025

Military Judges: Benjamin C. Robertson (arraignment)
and Adam M. King (pretrial motions and trial)

For Appellant: *Lieutenant Zoe R. Danielczyk*, JAGC, USN (argued); *Captain Arthur L. Gaston III*, JAGC, USN (on brief).

For Appellee: *Lieutenant Lan T. Nguyen*, JAGC, USN (argued); *Major Candace G. White*, USMC, and *Brian K. Keller*, Esq. (on brief); *Colonel Joseph M. Jennings*, USMC, and Lieutenant Commander James P. Wu Zhu, JAGC, USN; Lieutenant K. Matthew Parker, JAGC, USN.

Amici Curiae in support of Appellee: *Lieutenant Commander Philip J. Corrigan*, JAGC, USN, *Major Brian L. Farrell*, USMCR, and *Lieutenant Emily N. Deliz*, JAGC, USN (on behalf of U.S. Navy Victims' Legal Counsel Program and U.S. Marine Corps Victims' Legal Counsel Organization) (on brief).

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge HARDY, and Judge JOHNSON joined.

―――――――――――

Judge MAGGS delivered the opinion of the Court.

The granted issue requires us to decide whether the "military judge abuse[d] his discretion by admitting and considering, over defense objection, allegations of additional misconduct in the unsworn victim impact statement." We hold that the military judge abused his discretion, but we determine that the error was not prejudicial. We therefore affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA), which affirmed the findings and sentence in this case. *United States v. Campos*, No. 202200246, 2024 CCA LEXIS 87, at *28, 2024 WL 863364, at *11 (N-M. Ct. Crim. App. Feb. 29, 2024) (unpublished).

## I. Background

The victim in this case, J.A.P.P., married Appellant in July 2019 and joined him at his station in Japan on October 27, 2019. Appellant's misconduct began shortly afterward. At trial, Appellant stipulated the following facts:

> a. <u>Between 1 November 2019 and 7 June 2020, Sgt Campos [i.e., Appellant] committed multiple unlawful acts of domestic violence against J.A.P.P. These acts include:</u>
>
>> i.   On 11 January 2020, Sgt Campos became irritated with J.A.P.P., and pulled her hair in their house and pushed her against a wall. The push against the wall caused visible bruising to J.A.P.P.'s back.
>>
>> ii.  During the first week in June of 2020, Sgt Campos became irritated with J.A.P.P. because she was crying in response to statements he made earlier to her about their relationship. . . . Sgt Campos . . . struck J.A.P.P. in the face with his hand, kicked her shins, and pulled her hair. . . .
>>
>>    . . . .
>
> b. <u>Strangulation and biting of J.A.P.P. on 8 March 2022.</u>
>
>    . . . .

ii. Shortly before 1950 hours on 8 March 2022, Sgt Campos removed his shirt and then repeatedly tried to hug J.A.P.P. and be affectionate. J.A.P.P. refused Sgt Campos' advances. In response to J.A.P.P. refusing his attempts, Sgt Campos pushed J.A.P.P. from their bed. Sgt Campos then continued to try to be affectionate with J.A.P.P., but he eventually fell to the ground when she avoided him. Sgt Campos then pulled J.A.P.P. to the ground by her hair. J.A.P.P. then exited the bedroom and made it to the landing.

iii. Sgt Campos followed J.A.P.P. out of the bedroom and forced her face down onto the floor. Sgt Campos then placed his arms over J.A.P.P.'s throat, wrapped his legs around her legs, and placed his entire weight on her body. J.A.P.P. tried to yell for help, but Sgt Campos squeezed [her] airway preventing her from communicating. Sgt Campos remained in this position on top of J.A.P.P. for approximately 3 minutes.

iv. During one of the three minutes, Sgt Campos remained on top of J.A.P.P., Sgt Campos exerted pressure on J.A.P.P.'s neck to the extent that he strangled her. While strangling J.A.P.P., Sgt Campos intentionally impeded the normal breathing and circulation of blood of J.A.P.P. by applying pressure through his hands to J.A.P.P.'s neck. The impediment of air flow prevented J.A.P.P. from taking a breath for approximately one minute. The impediment of blood flow prevented blood from flowing through J.A.P.P.'s neck, causing several blood vessels to explode on J.A.P.P.'s face in the form of petechiae.

v. During the strangulation, Sgt Campos changed his hand position on J.A.P.P.'s neck, and placed his fingers directly on her throat. Additionally, Sgt Campos bit the back of J.A.P.P.'s neck with enough

3

> pressure to leave a visible bite mark on her
> neck from his teeth.[1]

The military judge found Appellant guilty, consistent with his pleas, of three specifications of domestic violence in violation of Article 128b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928b (2018). One specification alleged that Appellant "did, at or near Iwakuni, Japan, on or about 8 March 2022, commit an assault upon J.A.P.P. . . . by unlawfully strangling her." Another specification alleged that Appellant did at the same time and place "unlawfully bite J.A.P.P. on the neck with [his] teeth." The third alleged that Appellant did:

> at or near Iwakuni, Japan, on divers occasions
> between on or about 1 November 2019 and 7
> June 2020, commit a violent offense against
> J.A.P.P. . . . to wit: unlawfully
>
> a) pull the hair of J.A.P.P. with [his] hand;
>
> b) strike J.A.P.P. on the head with [his] hand;
> [and]
>
> c) kick J.A.P.P. on the leg with [his] leg.[2]

During the sentencing phase of the trial, J.A.P.P. delivered an unsworn statement of approximately 1,150 words. In this statement, J.A.P.P. described numerous impacts that resulted from the offenses of which Appellant had been found guilty. She explained that Appellant's act of

---

[1] "Petechia," referred to in paragraph iv., is "a minute reddish or purplish spot containing blood that appears in skin or mucous membrane as a result of localized hemorrhage." *Merriam-Webster Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged/petechia (last visited Feb. 14, 2025).

[2] This specification also alleged that Appellant bit J.A.P.P. on the lip and chest, but the military judge found Appellant not guilty of these words of the specification. The military judge also found Appellant guilty of damaging military property, drunkenly operating a vehicle, and drunk and disorderly conduct in violation of Articles 108, 113, 134, UCMJ. The military judge found Appellant not guilty of other charged offenses.

strangling her gave her a feeling of "hopelessness." She described returning to work as "horrible" because she had to cover up bruises and because her body and head ached. She said that she felt "shame and embarrassment." She declared that "anxiety attacks not only happen when I would see people that remotely resemble him, but also when I will see his friends in and around the base." She also stated that her social life has been affected, that she has flashbacks, and that she has trouble focusing and sleeping.

In addition, J.A.P.P. made the following assertions which mentioned some misconduct for which Appellant had not been charged:

> Although, 8 March [is] the day I will never forget due to the emotional and physical trauma I experienced, this was not the first incident of emotional and physical abuse from him. It started with him yelling at me occasionally then he began to grab and pull my arms. Then he started pulling on my hair. Other times he will kick me, and there were times when he will get angry and slap me.
>
> He progressively got worse to a point where he will have me immobilized against the wall. He would also take my phone away from me, kept it from me. He cut the Internet off, which restricted my communication with anyone outside of our home.

J.A.P.P. concluded her unsworn statement by saying: "I am thankful I am alive . . . because I am standing here telling all of you what type of person Juan [i.e., Appellant] is and how he impacted me. I want to ensure he never does this to anyone else when he is released."

Appellant objected to the following accusations in J.A.P.P.'s unsworn statement: that he yelled at her, that he grabbed and pulled her arms, that he immobilized her against the wall, and that he took her phone away and cut off the internet. He argued that these statements were improper allegations of uncharged misconduct with "no direct relation" to the offenses to which he had pleaded guilty. The military judge, however, overruled Appellant's objection, reasoning:

> [This portion of J.A.P.P.'s statement concerns] a continuous course of conduct regarding similar crimes. Domestic violence, including physical and emotional intimidation and isolation against the same victim, the accused's spouse . . . and primarily in the same general location in and around their residence and relatively close timeframe. They had only lived together at this time since October of 2019.

> Of note, the additional charge to which the accused pleaded guilty included multiple prior incidents of domestic violence throughout 2020. Thus, . . . to the extent the challenge[d] statements are not actually related to the actual offenses that the accused pleaded guilty to under the additional charge, his statements contain matters considered as a continuing course of domestic abuse aimed at [J.A.P.P.] by the accused resulting in negative social and psychological harm which is proper for me to consider under R.C.M. 1001(c).

The military judge further stated: "I will note that I make these considerations of the victim impact statement as a matter before the Court in sentencing the accused only for the offenses that he has been found guilty."

The plea agreement limited Appellant's confinement to seventy-two months. Consistent with this limitation, the military judge sentenced Appellant to confinement for a total of seventy months. The military judge also sentenced Appellant to be reduced to the grade of E-1 and dishonorably discharged. The NMCCA affirmed the findings and sentence. *Campos*, 2024 CCA LEXIS 87, at *28, 2024 WL 863364, at *11. The NMCCA held that the military judge had not abused his discretion in allowing J.A.P.P. to discuss the uncharged misconduct and that even if there were an error, the error would be harmless. *Id.* at *26-27, 2024 WL 863364, at *10-11.

## II. Standards of Review and Applicable Law

The meaning of Rule for Courts-Martial (R.C.M.) 1001 is a question of law that this Court reviews de novo. *United States v. Edwards*, 82 M.J. 239, 243 (C.A.A.F. 2022). This

Court reviews a military judge's ruling on an objection to a victim's unsworn statement for abuse of discretion. *United States v. Hamilton*, 78 M.J. 335, 340 (C.A.A.F. 2019). "Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider important facts." *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024) (citing *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017)).

Rule for Courts-Martial 1001(c) (2019 ed.) governs the victim's unsworn statement in this case. Three clauses of this rule are pertinent. R.C.M. 1001(c)(5)(A) provides: "The crime victim may make an unsworn statement and may not be cross-examined by trial counsel or defense counsel, or examined upon it by the court-martial." R.C.M. 1001(c)(3) further provides: "The content of statements made under paragraph[] . . . (5) may only include victim impact and matters in mitigation." And R.C.M. 1001(c)(2)(B) states: "For purposes of this subsection, victim impact includes any financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense of which the accused has been found guilty."

When a military judge has abused his discretion in rejecting objections to a victim's unsworn statement, the Court will grant relief only if the Court is persuaded that the improper portion of the victim impact statement "substantially influenced the adjudged sentence." *Hamilton*, 78 M.J. at 342-43 (internal quotation marks omitted) (citation omitted). In determining whether improperly admitted evidence substantially influenced a sentence, this Court considers four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *Id.* at 343 (internal quotation marks omitted) (citation omitted). Although unsworn statements are not evidence, this Court has applied the same factors

in considering whether improper aspects of unsworn statements caused prejudice.[3]

### III. Discussion

Appellant asserts that the military judge abused his discretion in overruling his challenges to J.A.P.P.'s unsworn statement under R.C.M. 1001(c). We agree with Appellant that an error occurred but conclude that the error did not substantially influence the sentence.

### A. Application of R.C.M. 1001(c)

In her unsworn statement, J.A.P.P. accused Appellant of yelling at her, grabbing and pulling her arms, immobilizing her against a wall, taking her phone away, and cutting off her internet service. Appellant, however, was not charged with any offense in connection with these alleged acts. The general question in this appeal is therefore whether, or under what circumstances, a victim's unsworn statement may contain allegations of uncharged misconduct.

Appellant asserts that the military judge should have sustained his objections to the accusations of uncharged misconduct because R.C.M. 1001(c)(3) provides that a victim's unsworn statement "may only include victim impact and matters in mitigation." Appellant contends that the accusations of uncharged misconduct are not "victim impact" within the meaning of R.C.M. 1001(c)(2)(B) because they are not descriptions of the "financial, social, psychological, or medical impact on the crime victim directly relating to or arising from the offense[s] of which the accused has been found guilty." Instead, Appellant asserts, the accusations concerned offenses *of which he had not been found guilty*, and which served only to persuade the military judge that Appellant is a bad person.

---

[3] This Court has noted concerns about the helpfulness of these factors in assessing prejudice at sentencing. *Edwards*, 82 M.J. at 247. In this case, however, neither party has questioned the use of these factors.

We agree with Appellant that the military judge abused his discretion. The definition of "victim impact" in R.C.M. 1001(c)(2)(B) includes two distinct elements: the *offenses of which the accused has been found guilty* and the *impacts* of those offenses on the victim. Both elements must be satisfied. For example, in unobjectionable portions of her statement, J.A.P.P. described: (1) the various offenses of which Appellant was found guilty, and (2) how those offenses caused her feelings of pain, embarrassment, and anxiety. These portions of her statement met the requirements of "victim impact" under R.C.M. 1001(c)(2)(B) because she discussed both elements. In contrast, J.A.P.P.'s accusations of uncharged misconduct addressed neither the offenses of which Appellant was found guilty nor the impact of those offenses. We therefore conclude that J.A.P.P.'s accusations of uncharged conduct were not "victim impact" within the meaning of R.C.M. 1001(c)(2)(B) and that including these accusations in the unsworn statement violated R.C.M. 1001(c)(3).

Our holding is consistent with what J.A.P.P. herself said in her unsworn statement. As noted above, she concluded the statement by explaining that she hoped her remarks revealed both "what type of person [Appellant] is" and "how he impacted [her]." Describing the impacts of offenses for which Appellant was found guilty was permissible under R.C.M. 1001(c)(2)(B). But nothing in R.C.M. 1001(c)(2)(B) and 1001(c)(3) authorizes an unsworn statement to provide information about the accused's bad character. The military judge therefore abused his discretion in overruling Appellant's objections to the unsworn statement.

The Government makes two significant arguments in response. First, the Government contends that a victim may provide context for understanding the impact of the accused's offenses *and* that the description about Appellant's uncharged misconduct properly provided such context in this case. We agree that an unsworn statement may contain information that is relevant for understanding the impact of offenses for which the accused has been found

guilty. For example, in her unsworn statement, J.A.P.P. explained that she had to go to work, despite her pain and embarrassment, because she needed to support herself. This explanation provided context for understanding the impact of Appellant's offenses by making clear that J.A.P.P. could not avoid her pain and embarrassment simply by staying home. But we disagree with the Government's assertion that the uncharged misconduct also provided relevant context in this case. When J.A.P.P. accused Appellant of the uncharged misconduct, her statement provided no explicit or implicit explanation of how the uncharged misconduct was relevant to the impact of the charged offenses. Accordingly, as Appellant contends, the description of the uncharged misconduct appears to be relevant only to understanding Appellant's character which, again, is not "victim impact" as defined in R.C.M. 1001(c)(2)(B).

Second, the Government argues that the description of the uncharged misconduct in the victim impact statement was proper under this Court's decision in *United States v. Mullens*, 29 M.J. 398 (C.M.A. 1990). In *Mullens*, the accused pleaded guilty to two specifications of sodomy with his minor son and one specification each of indecent acts with his minor son and with his minor daughter. *Id.* at 398-99. As part of his plea agreement, the accused made a stipulation of fact in which he admitted to committing additional instances of sodomy and indecent acts that were not charged. *Id.* at 399. The government presented this stipulation of fact to the members during presentencing. *Id.* at 400. This Court held that no error occurred because the uncharged misconduct was proper evidence in aggravation under R.C.M. 1001(b)(4) (1984 ed.).[4] The Court reasoned:

> Clearly, the uncharged misconduct delineated in this stipulation was directly related to the conduct for which appellant was found guilty. The

---

[4] At the time, this provision (which has since been expanded) stated: "The trial counsel may present evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty."

> stipulation evidenced a continuous course of conduct involving the same or similar crimes, the same victims, and a similar situs within the military community, *i.e.,* the servicemember's home. These incidents demonstrate not only the depth of appellant's sexual problems, but also the true impact of the charged offenses on the members of his family. These were appropriate sentence considerations under the above Manual rule.

29 M.J. at 400 (citation omitted). The Government argues that the uncharged misconduct in J.A.P.P.'s unsworn statement in this case similarly shows a continuous course of conduct involving the same victim in the same place and that it was therefore proper. The Government further notes that the *Mullens* opinion specifically stated that the uncharged misconduct could show the "impact" of the accused's offenses.

Although we recognize similarities between this case and *Mullens*, we decline to extend the holding of *Mullens* with respect to evidence in aggravation under R.C.M. 1001(b)(4) (1984 ed.) to apply to victim impact statements under R.C.M. 1001(c) (2019 ed.). Evidence in aggravation is different from a victim's statement under R.C.M. 1001(c) in significant ways. Aggravation evidence is subject to the Military Rules of Evidence (M.R.E.), which means that a witness who provides such evidence must testify under oath and be subjected to cross-examination. In addition, the military judge must test the evidence for unfair prejudice under M.R.E. 403. *United States v. Nourse*, 55 M.J. 229, 232 (C.A.A.F. 2001) (following *Mullens* where the military judge expressly assessed the evidence under M.R.E. 403). In addition, the term "victim impact" now has a specific definition in R.C.M. 1001(c)(2)(B), which did not exist at the time *Mullens* was decided. As explained above, J.A.P.P.'s accusations of uncharged misconduct do not fit this definition.[5] We thus find the Government's arguments unpersuasive.

---

[5] Our conclusion here concerns only victim statements under R.C.M. 1001(c). We agree with the Discussion in the *Manual for*

## B. Prejudice

Although we have held that the military judge abused his discretion in allowing J.A.P.P. to accuse Appellant of uncharged misconduct in her unsworn statement, we cannot grant relief unless the error substantially influenced the sentence. *Hamilton*, 78 M.J. at 343 (citing *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009)). Appellant argues that the error was prejudicial for several reasons. He notes that the military judge specifically stated that he would consider the statements for context and course of conduct. Appellant also emphasizes that the military judge ultimately adjudged a sentence close to the maximum allowed by the sentencing agreement. Appellant additionally asserts that the accusation of uncharged misconduct provided "new ammunition" against him which may have increased his sentence.

As explained above, our precedent establishes four factors for assessing prejudice when evidence is improperly admitted. The first two factors that we consider are the strength of the Government's case and the strength of the defense case. These factors, however, provide little assistance here because Appellant pleaded guilty and made a stipulation of fact. In this situation, the Government's case naturally is very strong, and the defense case is not.

The third and fourth factors are the materiality and quality of the evidence in question.[6] Here, we assess the

---

*Courts-Martial, United States* (2019 ed.), following R.C.M. 1001(c)(5), which explains that while a "victim's statement should not exceed what is permitted under R.C.M. 1001(c)(3)"—meaning the victim's statement may only contain "victim impact" as defined in R.C.M. 1001(c)(2)(B)—the "victim may also testify as a witness during presentencing proceedings in order to present evidence admissible under a rule other than R.C.M. 1001(c)(3)." We do not address the permissible content of such testimony in this opinion.

[6] We again recognize that the accusations in J.A.P.P.'s statement are not "evidence," but we may still assess their materiality in sentencing and their quality.

materiality of the accusations of uncharged misconduct as low, even though the military judge said that he would consider the misconduct. The accusations of the nonviolent conduct of yelling, taking away a cell phone, and turning off the internet were likely not significant in setting the sentence when compared to the serious acts of violence to which Appellant pleaded guilty—strangling J.A.P.P., biting her neck, pulling her hair, and striking and kicking her—and the impacts of those acts. In addition, although the accusations that Appellant pulled J.A.P.P.'s arms and immobilized her against the wall did involve physical conduct, their materiality was still low because they added little to the more egregious violent conduct of which he pleaded guilty.

We also assess the quality of the accusations as low. The accusations were not sworn and were not tested by cross-examination. In addition, the accusations were very brief and contained little or no detail about the harm they may have caused. The military judge, accordingly, was unlikely to give them as much weight as he would have given to actual evidence or to more informative statements. In the light of these factors, we are convinced that the improper content of the unsworn statement did not substantially influence the sentence. Thus, while we disagree with the NMCCA about whether the military judge abused his discretion, we agree with the NMCCA's decision that there was no prejudice and that the findings and sentence must be affirmed.

## IV. Conclusion

The granted issue is answered in the negative. The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.