# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 38854 (rem)**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Kenneth W. FRANK, Jr.**
Technical Sergeant (E-6), U.S. Air Force, *Appellant*

———————————

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 5 April 2018

———————————

*Military Judge:* Ira Perkins; Christopher F. Leavey (post-trial session); Tiffany M. Wagner (*DuBay* hearing).

*Approved sentence:* Dishonorable discharge, confinement for 1 year, and reduction to E-1. Sentence adjudged 11 March 2015 by GCM convened at Incirlik Air Base, Turkey.

*For Appellant:* Major Isaac C. Kennen, USAF; Major Annie W. Morgan, USAF.

*For Appellee:* Major Matthew L. Tusing, USAF; Gerald R. Bruce, Esquire; Mary Ellen Payne, Esquire.

Before MAYBERRY, JOHNSON, and SPERANZA, *Appellate Military Judges.*

Senior Judge JOHNSON delivered the opinion of the court, in which Chief Judge MAYBERRY and Judge SPERANZA joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

———————————

JOHNSON, Senior Judge:

A general court-martial composed of officer and enlisted members found Appellant guilty, contrary to his pleas, of one specification of rape in violation of Article 120 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The court-martial sentenced Appellant to a dishonorable discharge, confinement for one year, and reduction to E-1. The convening authority approved the sentence as adjudged but waived the mandatory forfeitures of Appellant's pay and allowances for the benefit of Appellant's child.

Upon our initial review, Appellant contended: (1) a member of the court-martial failed to disclose information in voir dire that would have been a basis for a challenge for cause; (2) the military judge erred in denying a challenge for cause; (3) the military judge erred in admitting evidence under Military Rule of Evidence (Mil. R. Evid.) 413 and providing a related instruction; (4) the military judge erroneously instructed the court members regarding the burden of proof; and (5) the military judge erred by failing to put the court members into deliberations to reconsider the sentence. In addition, we considered whether Appellant was entitled to relief due to a facially unreasonable delay in the appellate review of his court-martial. We determined a post-trial factfinding hearing in accordance with *United States v. DuBay*, 37 C.M.R. 411, 413 (C.M.A. 1967), was appropriate in order to decide issue (1), and such a hearing was held pursuant to an order of this court. After receiving supplemental filings from the parties in light of the *DuBay* hearing, we ultimately found no relief was warranted and we affirmed the findings and sentence. *United States v. Frank*, No. ACM 38854, 2017 CCA LEXIS 311 (A.F. Ct. Crim. App. 28 Apr. 2017) (unpub. op.) (*Frank I*). The United States Court of Appeals for the Armed Forces (CAAF) granted review,[1] set aside our prior decision, and remanded the case to us for a new review under Article 66, UCMJ, 10 U.S.C. § 866, in light of its decision in *United States v. Com-*

---

[1] The CAAF granted review of the following issues:

> I. WHETHER TSGT MA SHOULD HAVE BEEN DISMISSED FROM THE COURT-MARTIAL FOR IMPLIED BIAS.

> II. WHETHER THE MILITARY JUDGE ERRED IN ADMITTING EVIDENCE OF MISCONDUCT THAT WAS CHARGED AND LATER DISMISSED FOR LACK OF EVIDENCE UNDER MILITARY RULE OF EVIDENCE 413 AND PROVIDING THE STANDARD MILITARY RULE OF EVIDENCE 413 INSTRUCTION.

*United States v. Frank*, 76 M.J. 476 (C.A.A.F. 2017).

*misso*, 76 M.J. 315 (C.A.A.F. 2017). *United States v. Frank*, 77 M.J. 77 (C.A.A.F. 2017).

For the reasons stated in *Frank I*, we again find no relief is warranted with respect to the military judge's denial of the challenge for cause, the military judge's admission of evidence under Mil. R. Evid. 413 and provision of a related instruction, the military judge's instructions regarding the burden of proof, the military judge's failure to direct reconsideration of the sentence, or facially unreasonable post-trial delay.[2] Having received additional supplemental filings from the parties and having considered the case in light of *Commisso*, we also again conclude no relief is warranted with respect to the alleged court member misconduct. Accordingly, we affirm the findings and the sentence.

## I. BACKGROUND

Appellant was assigned to Incirlik Air Base (AB), Turkey. He met Staff Sergeant (SSgt) RT at an on-base training event and they began communicating with one another by instant message and Facebook. In April 2014, Appellant and SSgt RT attended an on-base festival together. Over the course of the day SSgt RT consumed several alcoholic drinks and became intoxicated. She did not remember leaving the festival, but she recalled being in front of Appellant's dorm room with several other people. Her next memory after that was "waking up" to Appellant "having sex with her" in his room. She later testified that after she woke up she "scooted" away from Appellant and told him it hurt, but Appellant pulled her back and continued. SSgt RT testified she was not consenting. She did not initially report this incident.

SSgt RT had limited contact with Appellant after the April 2014 incident. However, on the night of 28 June 2014, SSgt RT encountered Appellant at the club on base. SSgt RT had left her headband in Appellant's room during the April incident, and she told him she wanted to get it back. SSgt RT later testified she followed Appellant to his room. When they arrived, Appellant opened the door and pointed to the headband, which was on a table inside. SSgt RT entered the room to get her headband. When she turned around, she saw Appellant had closed the door behind them and lowered his pants and underwear. Appellant placed his hand on SSgt RT's head and pushed her

---

[2] Assuming, without deciding, that the CAAF's order setting aside our previous decision rendered our earlier opinion a complete legal nullity, we have reconsidered and restated our holdings on these issues to ensure it is clear that Appellant received his full Article 66, UCMJ, 10 U.S.C. § 866, appellate review.

down to his penis, which he shoved in her mouth. SSgt RT removed it by pushing Appellant and turning her head. SSgt RT convinced Appellant to let go of her by insisting she had to use his bathroom. When SSgt RT eventually exited the bathroom, she found Appellant standing in his room completely naked. Appellant grabbed the purse SSgt RT was holding and pushed her head down again, but she knocked him off balance by shoving him and she fled the room.

SSgt RT told her roommate about the June assault on the following day, a Sunday. The day after that, she informed a supervisor of the June assault, which ultimately led to her interview by the Air Force Office of Special Investigations. Appellant was subsequently charged with sexual assault by causing bodily harm for the April incident and with rape for the June incident; however, the convening authority dismissed the sexual assault specification for the April incident after the Article 32, UCMJ, 10 U.S.C. § 832, hearing. The sole charge before Appellant's court-martial was based on the June assault. The specification alleged:

> [Appellant] did, at or near Incirlik Air Base, Turkey, on or about 29 June 2014, commit a sexual act upon [SSgt RT], to wit: penetration of [SSgt RT's] mouth with [Appellant's] penis, by unlawful force, to wit: grabbing [SSgt RT's] head with his hand and putting his penis into [SSgt RT's] mouth.

Appellant's court-martial convened on 10 March 2015. Technical Sergeant (TSgt) MA was selected to serve as one of the court members. During group voir dire of the court members by the military judge, TSgt MA indicated she did not know Appellant, nor did she know anyone named in the specification of the charge. She also responded negatively when the military judge asked if she, or a member of her family, or "anyone close to [her] personally" had "ever been the victim of an offense similar to the charge in [Appellant's] case."

In response to a question from trial defense counsel, TSgt MA identified herself as a victim advocate. During individual voir dire, TSgt MA explained her role as a victim advocate involved providing services and support to individuals who reported being victims of sexual assault, but not assessing a victim's veracity or assuming the guilt of the alleged perpetrator. TSgt MA had undergone training and attended meetings for victim advocates, but she denied knowing any of the facts of Appellant's case. In the 11 months she had been a victim advocate to that point, TSgt MA had never been assigned to assist a victim of an alleged sexual assault. When the military judge clarified, "[Y]ou've never actually interacted with somebody who's a complainant of sexual assault, correct?" she responded, "No." TSgt MA stated her training and experiences as a victim advocate would not prevent her from serving as a fair and impartial court member. At the conclusion of voir dire, TSgt MA was

not challenged for cause, and the Defense elected to exercise its peremptory challenge against another member. TSgt MA served on the panel that convicted and sentenced Appellant.

Appellant submitted a declaration with his initial assignments of error asserting that, notwithstanding TSgt MA's responses at trial, she in fact did know Appellant. In particular, Appellant asserted he met TSgt MA when they both attended Noncommissioned Officer Academy (NCOA) in Germany for several weeks in late 2013. At that time, Appellant knew TSgt MA was dating TSgt JR, another student and Appellant's suitemate at NCOA with whom he shared a common bathroom. Appellant would also see TSgt MA at the school on a daily basis and he knew she had orders to transfer from Germany to Incirlik AB, where he was stationed. Appellant further stated that after TSgt MA arrived at Incirlik AB he would see her around the base and they would make "small talk." Appellant indicated he also had professional contact with TSgt MA because she was an "account custodian" that he dealt with. Appellant stated TSgt MA was aware prior to trial from speaking with Appellant that he was on administrative hold, but Appellant did not know if TSgt MA was aware of the allegations involved in his court-martial. Appellant stated he could not recall if he informed his trial defense counsel of his prior interactions with TSgt MA. However, Appellant asserted he was entitled to a new trial or, at a minimum, a fact-finding hearing pursuant to *DuBay*, 37 C.M.R. at 413, to explore TSgt MA's failure to disclose her knowledge of Appellant.

In response, the Government did not offer any evidence to rebut Appellant's allegations but asserted Appellant had failed to demonstrate that TSgt MA failed to honestly answer any question during voir dire or, assuming she had, that honest answers would have indicated a basis for challenge for cause. *See United States v. Mack*, 41 M.J. 51, 55 (C.M.A. 1994). On 6 December 2016, we ordered a post-trial factfinding hearing pursuant to *DuBay*, 37 C.M.R. at 413.[3] The hearing was held on 14 and 16 February 2017 at Joint

---

[3] Our order instructed the military judge to answer the following questions:

> 1. Did TSgt [MA] fail to honestly answer questions from the military judge regarding any prior knowledge of or relationship with Appellant?

> 2. What was the extent of TSgt [MA's] interaction with Appellant, if any, prior to the commencement of Appellant's court-martial on 10 March 2015?

*(Footnote continues on next page)*

Base Andrews, Maryland. A military judge heard testimony from TSgt JR, Appellant, and TSgt MA; received a number of appellate exhibits; and heard argument from counsel for both sides. In Appellant's testimony, he elaborated on his interactions with TSgt MA at NCOA and at Incirlik AB, including one face-to-face conversation at each location in addition to exchanging casual pleasantries. For her part, TSgt MA maintained that she did not know Appellant or recall any interaction with him prior to the court-martial.[4]

However, in addition to TSgt MA's prior interactions with Appellant, the military judge and parties explored TSgt MA's prior experiences, pre-dating and apart from her role as a trained victim advocate, in speaking with other Air Force members about their sexual activities after consuming alcohol. TSgt MA's testimony on this point consisted substantially of the following: prior to TSgt MA becoming a victim advocate, other Airmen came to her and spoke with her about sexual encounters they had with other Air Force members after consuming alcohol; these individuals were "unhappy" about the sex they had; they were "confused" and wanted to "clarify" what had happened after a "drunk one-night stand kind of thing." TSgt MA stated this occurred "a couple" of times throughout her Air Force career. Both men and women approached her in this way. They were co-workers and not close friends. TSgt MA did not deliberately solicit or induce others to discuss such matters with her. TSgt MA believed the individuals felt comfortable speaking to her; she

---

3. What, if anything, did TSgt [MA] know about Appellant's pending court-martial and the underlying charged offense prior to the commencement of trial on 10 March 2015?

4. What was the extent of TSgt [MA's] prior relationship or interaction, if any, with the victim of the charged offense, SSgt RT, or any other witness who testified at Appellant's court-martial?

5. If TSgt [MA] did fail to accurately answer the military judge's questions regarding prior knowledge or relationship with Appellant, would accurate answers have provided a basis for a challenge for cause against TSgt [MA]?

In addition, our order authorized the military judge to "address any other matters that may arise during the fact-finding hearing that he or she finds to be pertinent to the issues in question."

[4] TSgt MA testified that after the trial, she recognized Appellant's name on an old email she had received in her capacity as a munitions account custodian. She informed someone at the base legal office of this. According to TSgt MA, once the unnamed individual(s) at the legal office clarified with her that she did not actually know Appellant, the matter was not pursued.

provided "an ear" and let them do most of the talking. TSgt MA would give them "suggestions for the next time they were at a party" but "never told them that they were sexually assaulted." She did not bring up these experiences during voir dire because those situations were not similar to the offense Appellant was charged with, so she did not think of them.

After the hearing, the military judge made a number of written findings of fact. She found TSgt MA had no actual bias against Appellant. However, with respect to TSgt MA's prior knowledge of and interaction with Appellant, the military judge found TSgt MA did fail to honestly answer questions during voir dire. In particular, the military judge found TSgt MA did know Appellant at the time of trial, and found TSgt MA's testimony at the *DuBay* hearing that she did not know him, did not recognize his name on the charge sheet, and did not recognize his face at trial to be "not credible." Nevertheless, the military judge further found TSgt MA's interactions with Appellant had been "superficial" and would not have established a basis for a challenge for cause against TSgt MA for actual or implied bias had they been disclosed during voir dire. The military judge also found TSgt MA had no prior knowledge of the facts of the case nor any prior relationship with SSgt RT or with any other witness who testified at trial.

With respect to TSgt MA's prior conversations with other Airmen regarding alcohol-related sexual encounters, the military judge found:

> [T]hroughout her career [TSgt MA] was a quasi-Victim Advocate[5] for other Airmen and co-workers, in that she would listen to and counsel those who doubted the consent of their sexual activities. TSgt [MA] has an unassuming disposition that allows many people to feel comfortable sharing personal details of their intimate relationships, and many did so. She had multiple Airmen (both men and women) confide in her details of a sexual experience in which they were unsure about whether their sexual relations were consensual. She would listen to the Airmen who were "confused" about their experiences. She would always provide these co-workers with "an ear" and suggestions on what to do and how to act if again placed in a similar situation. All of the incidents the Airmen co-workers discussed with her involved alcohol consumption followed by a sexual encounter that caused confusion as to whether consent

---

[5] The military judge apparently coined the term "quasi-Victim Advocate"; TSgt MA never used it.

existed. These sexual situations were all sexual encounters involving two Airmen. TSgt [MA] considered all of these people she counseled "co-workers"—not close to her and not members of her family. She remembers being asked at the trial about knowing someone who had been a victim of a similar offense to that charged on the Flyer, but she did not think her co-workers' experiences were similar to the charged offense. Additionally, when asked at the *DuBay* hearing if she viewed these co-workers as victims, she was non-responsive and instead talked about providing an ear for them.

(Footnotes omitted) (footnote inserted).

The military judge did not specifically find that TSgt MA failed to honestly answer voir dire questions implicating her past experiences speaking with Airmen about their alcohol-related sexual encounters. However, the military judge noted TSgt MA was asked the following two questions during voir dire: "[A]ny of you because of a personal experience with yourself or involving someone that's close to you, been involved or affected by a situation involving sexual assault that you believe would affect your ability to sit impartially or without bias as a court member on this particular case?"; and "[Y]ou've never actually interacted with somebody who's a complainant of sexual assault, correct?" The military judge concluded her analysis as follows:

[TSgt MA] determined that the co-workers were not close enough to her to disclose to the Court. She also determined that the non-consensual sexual encounters of her co-workers were not similar to the charged offense she read on the Flyer such that she would have had to disclose those encounters. However, there were at least two questions asked that provided her the opportunity to divulge her past role assisting Airmen who were victims. Considering the totality of the circumstances—including her position as a Victim Advocate at the time of the trial, her long desire to be a Victim Advocate since 2006, her proactive counseling of Airmen co-workers questioning the consensual nature of their sexual relationships—she has a considerable interest in sexual assaults. That fact, coupled with the fact that TSgt [MA] had passing knowledge of the Appellant that she failed to disclose, and was specifically trained as a victim advocate, makes it, at the very least, a close call for implied bias. An objective observer may have substantial doubt about the fairness of the Appellant's court-martial if she sat as a member. When an implied bias challenge for cause is close,

the liberal grant mandate for defense applies. Therefore, a challenge for cause for implied bias exists.

In summary, the military judge concluded: (1) there was no actual bias; (2) TSgt MA failed to honestly answer questions implicating her prior knowledge of Appellant, but those interactions did not establish a basis for challenge for cause for implied bias; and (3) a basis for challenge for cause for implied bias existed with regard to TSgt MA's interactions with other Airmen regarding alcohol-related sexual encounters, but the military judge did not specifically find TSgt MA failed to honestly answer questions implicating those experiences.

## II. DISCUSSION

### A. Law

A court member's failure to disclose information in voir dire entitles an appellant to a new trial when the appellant demonstrates both (1) the member failed to answer honestly a material question on voir dire, and (2) a correct response would have provided a valid basis for a challenge for cause. *Mack*, 41 M.J. at 55. "A question is 'material' if it has 'some logical connection with the consequential facts' of the case, or is '[o]f such a nature that knowledge of them would affect a person's decision-making.'" *Commisso*, 76 M.J. at 322 (quoting *United States v. Albaaj*, 65 M.J. 167, 170 (C.A.A.F. 2007)). "[T]he test for member dishonesty is not whether the panel members were willfully malicious or intended to deceive—it is whether they gave objectively correct answers." *Id.* (citing *Albaaj*, 65 M.J. at 170).

Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears he or she "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." "This rule encompasses challenges based upon both actual and implied bias." *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)). "Actual bias is personal bias which will not yield to the military judge's instructions and the evidence presented at trial." *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citing *United States v. Reynolds*, 23 M.J. 292, 294 (C.M.A. 1987)). Implied bias "exists where the presence of a member on the panel would cause the public to think 'that the accused received something less than a court of fair, impartial members,' injuring the public's perception of the fairness of the military justice system." *Commisso*, 76 M.J. at 323 (quoting *United States v. Townsend*, 65 M.J. 460, 463 (C.A.A.F. 2008)). "Implied bias exists when . . . most people in the same position as the court member would be prejudiced." *Townsend*, 65 M.J. at 463. The test for implied bias is "objective, viewed through the eyes of the public,

focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276) (internal quotation marks omitted). "The hypothetical 'public' is assumed to be familiar with the military justice system." *Id*. (citing *United States v. Downing*, 56 M.J. 419, 423 (C.A.A.F. 2002)).

In general, when a military judge conducts a *DuBay* hearing, we review the findings of fact under a "clearly erroneous" standard and conclusions of law under a de novo standard. *See United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1995). We review rulings on challenges for implied bias "pursuant to a standard that is less deferential than abuse of discretion, but more deferential than de novo review." *United States v. Peters*, 74 M.J. 31, 33 (C.A.A.F. 2015) (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006); *United States v. Napoleon*, 46 M.J. 279, 283 (C.A.A.F. 1997)) (internal quotation marks omitted). This is because "cases of implied bias are based upon an objective test and therefore the military judge is given less deference." *Id*. at 34. "The military judge is also mandated to err on the side of granting a challenge. This is what is meant by the liberal grant mandate." *Id*. Nevertheless, the CAAF has stated that when there is no actual bias, implied bias should be invoked rarely. *United States v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001) (citing *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)).

**B. Analysis**

Upon our initial review, we applied the two-part test articulated in *Mack* to the findings and conclusions made by the military judge who conducted the *DuBay* hearing. *See Mack*, 41 M.J. at 55. The CAAF has directed us to conduct a new Article 66, UCMJ, review in light of its decision in *Commisso*, 76 M.J. at 323–24. In that case, the CAAF set aside the findings and sentence of a court-martial where three of ten panel members gave inaccurate statements during voir dire to the effect that they had no prior knowledge of the case, when in fact all three had been briefed on the case from the alleged victim's perspective multiple times when they participated in the installation's recurring Sexual Assault Review Board meetings. *Id*. at 317–18, 322–25. Moreover, during the court-martial all three remembered that they had been briefed on the case, but all three failed to correct their earlier, inaccurate statements during voir dire before the trial concluded. *Id*. at 320. Because the members failed to "honestly" answer the voir dire questions, and because honest answers would have provided a valid basis for challenge for cause, the CAAF set aside the findings and sentence. *Id*. at 322–23, 325.

The primary significance of *Commisso* to the instant case is not that it is factually similar, which it is not, nor that it overruled *Mack*, which our original opinion relied on. On the contrary, *Commisso* cited and relied on *Mack*, which remains the seminal case in assessing whether court member dishon-

esty during voir dire requires reversal on appeal. *See id.* at 322. Rather, in *Commisso* the CAAF clarified that *Mack's* requirement that court members answer voir dire questions "honestly" imposes an objective standard of accuracy rather than a subjective standard of lack of intent to deceive. *See id.* (citing *Albaaj*, 65 M.J. at 170). Therefore, in light of *Commisso*, we address the record in the instant case with the objective standard of accuracy in mind.

First, we find no abuse of discretion in the military judge's conclusion that there was no showing of actual bias against Appellant. TSgt MA affirmatively indicated at various points during voir dire that she could follow the military judge's instructions, hold the Government to its burden of proof, and serve as a fair and impartial court member. None of her answers at trial or during the *DuBay* hearing, nor any other evidence adduced, undermine the military judge's conclusion that TSgt MA was willing to consider the evidence and follow the court's instructions.

We find the military judge's finding that TSgt MA did not honestly answer voir dire questions regarding her prior knowledge of Appellant was not clearly erroneous. Appellant's testimony supported the military judge's findings that Appellant met TSgt MA at NCOA and continued to interact with her at Incirlik AB, including one conversation in which Appellant shared that he was engaged to be married and was on administrative hold. Based on her in-court observations, the military judge specifically found Appellant's testimony was credible and TSgt MA's denials were not. The military judge's conclusion that, although the relationship "did not extend beyond simple recognition and small talk," TSgt MA failed to honestly answer voir dire questions as to whether she knew Appellant is not a clear error. *See Wean*, 45 M.J. at 463.

We also agree with the military judge's conclusion that TSgt MA's prior interactions with Appellant, if disclosed in voir dire, would not have provided a basis for a challenge for cause for implied bias. The relationship Appellant described was both cordial and superficial. There is no indication TSgt MA had any knowledge that Appellant was facing a court-martial or of the underlying facts, that she personally knew any of the witnesses, or that she received any other information that would have adversely affected her view of Appellant prior to the commencement of the trial. Considering the totality of the circumstances, a member of the public familiar with the military justice system would not doubt the legality, fairness, or impartiality of Appellant's trial based on the limited interactions between Appellant and TSgt MA. *See* R.C.M. 912(f)(1)(N); *Commisso*, 76 M.J. at 323. Therefore, TSgt MA's failure to disclose those interactions does not entitle Appellant to a new trial.

Turning to TSgt MA's failure to disclose her experiences with Airmen who spoke with her regarding alcohol-related sexual encounters, we apply the

same two-part test for relief set forth in *Mack* and restated in *Commisso*, beginning with whether TSgt MA failed to honestly answer a material question during voir dire. *Commisso*, 76 M.J. at 322; *Mack*, 41 M.J. at 55. We again note the military judge did not specifically find TSgt MA failed to honestly answer any question in voir dire that implicated these experiences. The military judge did identify two questions that would have "provided [TSgt MA] the opportunity to divulge" this "past role," but this falls well short of a finding TSgt MA answered falsely. Indeed, the military judge found as fact that TSgt MA considered these Airmen co-workers and not "close to her or members of her family." In addition, the military judge specifically found TSgt MA considered these Airmen "victims" or complainants of sexual assault.

In the absence of a specific finding by the military judge that TSgt MA did or did not answer these questions "honestly"—meaning, in light of *Commisso*, "accurately"—we conduct our own de novo review. We find the record fails to establish that TSgt MA did not accurately answer any voir dire question that implicated her past interactions with Airmen who spoke with her regarding their alcohol-related sexual experiences.

The first voir dire question the military judge found to be potentially implicated by these experiences was: "[A]ny of you because of a personal experience with yourself or involving someone that's close to you, been involved or affected by a situation involving sexual assault that you believe would affect your ability to sit impartially or without bias as a court member on this particular case?" The record does not support a finding TSgt MA failed to answer this question accurately. First, TSgt MA testified these situations involved co-workers, not close friends, family members, or anyone "close to her," as specified in the question. Second, TSgt MA never identified these individuals as victims of sexual assault. She did not tell any of the individuals she spoke with that they were victims of sexual assault. There is no indication any of them ever reported being sexually assaulted. When defense counsel asked "[Y]ou've actually had individuals come to you and express that they believed themselves to be victims of sexual assault," TSgt MA responded, "No. They were trying to clarify what actually happened." Third, even if TSgt MA had identified these individuals as sexual assault victims, she could have accurately answered the voir dire question she was asked in the negative so long as she *believed* she could "sit impartially or without bias." For each of these reasons, so far as the record indicates, "No" was an accurate answer to the question asked.

The second voir dire question the military judge identified as "providing an opportunity" to discuss these experiences was: "[Y]ou've never actually interacted with somebody who's a complainant of sexual assault, correct?" Again the record does not support a finding that TSgt MA did not answer this

question accurately. First, this question was asked by the military judge during individual voir dire as a follow-up question in the specific context of TSgt MA's official role as a trained victim advocate, which she disclosed and which was explored during voir dire. There is no evidence that any of these conversations with co-workers occurred during TSgt MA's tenure as an official victim advocate at Incirlik AB.[6] Second, TSgt MA did not testify that she considered any of these individuals to be "victims" of sexual assault, and there is no evidence that any of them actually made a sexual assault complaint. On the contrary, as stated above, she resisted defense counsel's attempt to characterize these individuals as victims of sexual assault. Again, for each of these reasons, the record indicates "No" was an accurate answer to this question.

Different questions might have elicited additional information at trial, as they did at the *DuBay* hearing. However, neither *Mack* nor *Commisso* requires court members to answer questions that are not asked. Because Appellant has failed to show TSgt MA did not accurately answer any question posed in voir dire that implicated her past conversations with co-workers regarding these alcohol-related sexual encounters, he is not entitled to a new trial. Therefore, it is unnecessary to decide whether the military judge, informed by the liberal grant mandate, erred in concluding that the disclosure of TSgt MA's past conversations with co-workers regarding alcohol-related sexual encounters, combined with her long-standing interest in being a victim advocate, her status as a victim advocate at the time of trial, and her failure to disclose her prior knowledge of Appellant, established a basis for a challenge for cause for implied bias.[7]

---

[6] As stated above, we recognize that under *Commisso* court members must provide objectively accurate responses to voir dire questions; however, we do not interpret *Commisso* to require court members to extract questions from the context in which they are asked or to divine the questioner's ultimate intent before answering. *See Commisso*, 76 M.J. at 322.

[7] Although we do not address the military judge's finding of implied bias, we note her written findings and conclusions mischaracterize TSgt MA's testimony in several respects. For example, contrary to the military judge's finding, TSgt MA did not testify that "many" Airmen confided in her about these sexual encounters; TSgt MA did not describe her co-workers' experiences as "non-consensual sexual encounters," as the military judge calls them; and the military judge's assertion that the voir dire question "provided [TSgt MA] the opportunity to divulge her past role assisting Airmen who were victims" is misleading because TSgt MA did not characterize these Airmen as "victims."

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court