*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
KISOR, KIRKBY, and DALY
Appellate Military Judges

———————————

**UNITED STATES**
*Appellant*

**v.**

**Brandon K. FLANNER**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellee*

**No. 202300134**

———————————

Decided: 10 October 2023

Appeal by the United States Pursuant to Article 62, UCMJ

Military Judges:
Yong J. Lee (arraignment, motions)
Andrea C. Goode (motions)

Arraignment 28 February 2023 before a general court-martial convened at Marine Corps Base Camp Pendleton, California.

For Appellant:
*Captain Tyler W. Blair, USMC*

For Appellee:
*Lieutenant Zoe R. Danielczyk, JAGC, USN*

Judge KIRKBY delivered the opinion of the Court, in which Senior Judge KISOR and Judge DALY joined.

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

_____

KIRKBY, Judge:

This case is before us on an interlocutory appeal pursuant to Article 62(a)(1)(B), Uniform Code of Military Justice [UCMJ].[1] Appellee is charged with one specification of larceny, one specification of making a false claim, and one specification of using a forged signature in connection with a claim, in violation of Articles 121 and 124, UCMJ.[2]

On 18 April 2023, trial defense counsel moved to suppress Appellee's second interview with agents of the Naval Criminal Investigative Service [NCIS] that occurred on 15 September 2021. Appellee concedes here that his waiver of right to counsel at this interview was voluntary.[3] However, Appellee argued this waiver was neither knowing nor intelligent.[4] In her ruling, the military judge suppressed the interview on the grounds that Appellee had an inaccurate belief that he could not get an attorney until charges were preferred and would not have acquiesced to an interview without having a lawyer present but for that inaccurate belief.[5]

On interlocutory appeal, the Government asserts that the military judge abused her discretion when she suppressed Appellee's non-custodial, pre-preferral, self-scheduled interview with law enforcement in which Appellee waived his right to counsel and later claimed he had a right to detailed military counsel. We disagree.

_____

[1] 10 U.S.C. § 862(a)(1)(B).

[2] 10 U.S.C. §§ 921, 924.

[3] App. Ex. XXI at 1.

[4] *Id.*

[5] R. at 89-90.

## I. BACKGROUND

In February 2020, Appellee was one of two contracting officers located in Kuwait who managed all of the contracts for the United States Marine Corps [USMC] operating in that region. Between 14 February and 25 February 2020 Appellee submitted four purchase vouchers, two on 18 February 2020 and two on 23 February 2020. On 16 May 2020 it was discovered these four purchase vouchers, representing more than $30,000 in government funds, were allegedly fraudulent. Appellee's charges stem from this alleged theft of over $30,000 through the processing of fraudulent purchase voucher claims in Bahrain.[6]

On 19 May 2020, NCIS opened an investigation into the fraudulent vouchers. In May 2021, NCIS agents attempted to interrogate Appellee during their investigation into the suspected voucher fraud.[7] Prior to the interrogation, the NCIS agent, Special Agent (SA) Charlotte, advised appellee of his rights, including his right to counsel.[8] On the written rights advisement form, Appellee indicated he "would like to have a lawyer present during questioning," prompting the NCIS agent to end the interrogation.[9] After leaving that interrogation, Appellee visited the Defense Services Office [DSO] on Camp Pendleton.[10]

After several months passed without Appellant seeing any apparent progress on the investigation, Appellee, who was on legal hold past the end of his enlistment, sought an update from Master Gunnery Sergeant (MGgSgt) Charlie asking if he would receive military counsel at an NCIS interview.[11] The Master Gunnery Sergeant consulted the command Staff Judge Advocate and later informed Appellee that he "would only receive counsel if charges were preferred."[12] The Master Gunnery Sergeant's advice that Appellee would only receive counsel if charges were preferred gave Appellee the mistaken understanding that he "could not do an interview with military counsel present."[13]

---

[6] The charge sheet dtd 21 November 2022.

[7] App. Ex. XXII at 2.

[8] *Id.*

[9] *Id.*

[10] *Id.* at 4.

[11] *Id.*

[12] *Id.*

[13] *Id.*

Based on this belief and wanting to resolve his case since his family had already moved to Indiana, Appellee contacted the NCIS case agent requesting an interview.[14] At that time, the NCIS agent specifically noted that Appellee was given "incorrect info on lawyer by CMD [command]" and "explained preferral of charges=lawyer."[15]

Appellee went in for an interview with SA Charlotte[16] on 15 September 2021.[17] SA Charlotte started the interview by asking Appellee if he wanted to speak with her, since the last time he came in he had requested the presence of a lawyer.[18] Appellee told SA Charlotte that his enlisted leader explained his right to counsel to him and so he now understood he could not be appointed a lawyer until charges were preferred.[19] SA Charlotte then reviewed a rights advisement form with Appellee, and Appellee then signed.[20] According to the form, Appellee indicated that he understood he had the right to a "retained civilian lawyer and[/]or appointed lawyer present during [the] interview."[21] Appellee then participated in an interview with SA Charlotte.[22] The charges were preferred against Appellee on 18 November 2022.

Prior to trial, the defense moved to suppress Appellee's statements made during the September 2021 interview on the grounds that his rights waiver, while made voluntarily, was not knowing or intelligent.[23] After hearing evidence and argument, the military judge found that Appellee had been given "an inaccurate belief that he could not be appointed a lawyer until charges were preferred."[24] Furthermore, the judge found that Appellee "went forward with the interview without a lawyer present," even though "[h]is actions

---

[14] R. at 49.

[15] App. Ex. XXXI at 17.

[16] All names used in this opinion, with the exception of the counsel and judges, are pseudonyms.

[17] App. Ex. XXII at 4.

[18] App. Ex. XXI at 3.

[19] *Id.*

[20] App. Ex. XXIV at 18.

[21] *Id.*

[22] App. Ex. XXII at 17.

[23] App. Ex. XXI.

[24] R. at 89.

4

showed that he truly desired to have an attorney," based on his inaccurate belief.[25] Therefore, the military judge concluded that "the interview, although voluntary, was not based on a knowing and intelligent understanding of the right that he abandoned when he acquiesced to proceed without having an attorney present" and granted the motion to suppress.[26]

## II. DISCUSSION

"We review a military judge's ruling on a motion to suppress—like other decisions to admit or exclude evidence—for an abuse of discretion. In reviewing a military judge's ruling on a motion to suppress, we review fact-finding under the clearly-erroneous standard and conclusions of law under the *de novo* standard. Thus, on a mixed question of law and fact as in this case, a military judge abuses his [or her] discretion if his [or her] findings of fact are clearly erroneous or his conclusions of law are incorrect."[27] To be "clearly erroneous" a finding of fact "must be more than just maybe or probably wrong; it must strike us with the force of a five-week-old unrefrigerated dead fish."[28]

"The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[29] "In an Article 62, UCMJ, appeal, [the] Court reviews the military judge's decision directly and reviews the evidence in the light most favorable to the party which prevailed at trial," which, in this case, is Appellee.[30] "It is an abuse of discretion if the military judge: (1) predicates his ruling on findings of fact that are not supported by the evidence;

---

[25] *Id.*

[26] R. at 89-90.

[27] *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995). "On matters of fact with respect to appeals under Article 62, UCMJ, this Court is 'bound by the military judge's factual determinations unless they are unsupported by the record or clearly erroneous.'" *United States v. Becker*, 81 M.J. 483, 489 (C.A.A.F. 2021) (quoting *United States v. Pugh*, 77 M.J. 1, 3 (C.A.A.F. 2017)).

[28] *United States v. Cooper*, 80 M.J. 664, 672 n.41 (N-M. Ct. Crim. App. 2020) (further citations omitted).

[29] *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010).

[30] *Becker*, 81 M.J. at 488 (quoting *Pugh*, 77 M.J. at 3).

(2) uses incorrect legal principles; (3) applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) fails to consider important facts."[31]

In this case, the key issues before us are whether Appellee had a Fifth Amendment right to counsel during his second NCIS interview and whether the military judge applied the correct legal principles in making her ruling. The question presented to the military judge related to whether the Government proved, by a preponderance,[32] that Appellee's statement was voluntary.[33]

## A. The Military Judge Did Not Abuse Her Discretion Considering the Totality of the Circumstances

The military judge made the following findings of fact:

[1] The actions of various actors in this case, to include the DSO, left the accused with an inaccurate belief that he could not be appointed a lawyer until charges were preferred.

[2] [T]he accused went forward with the interview without a lawyer, based on that misunderstanding.

[3] His actions showed that he truly desired to have an attorney.

[4] He first invoked his right to have an attorney present with him during his first interview.

[5] He then made two separate attempts to get an attorney by visiting the Defense Services Office, where he was turned away.

[6] He also asked his chain of command a number of questions about how he could get an attorney.[34]

The CAAF has clearly stated that "[m]ilitary officials and civilians acting on their behalf are required to provide rights warnings prior to interrogating

---

[31] *Id.* at 489 (quoting *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017)) (additional citation omitted).

[32] Mil. R. Evid. 304(f)(6-7).

[33] Mil. R. Evid. 305.

[34] R. at 89-90. Numbered here for ease of reference.

a member of the armed forces if that servicemember is a suspect, irrespective of custody."[35] It is also clear that the specific rules and Articles applicable to unique situations must be assessed and in this case the unique circumstances of Appellee's interactions with NCIS, the DSO and his chain of command must be considered in applying the law. Military Rule of Evidence 305(c) lays out specific situations that implicate a suspect's right to counsel either under the Fifth or Sixth Amendment to the Constitution. In this case, that Fifth Amendment right to counsel was implicated during the first interrogation; where it was honored by the SA Charlotte. The applicability of the Fifth Amendment during the second interview is less clear despite the NCIS Agent again providing the "right to counsel" warning.[36]

Appellee concedes that the second interview was voluntary, however he argues that his waiver was not knowing and intelligent. On the other hand, the Government argues that by voluntarily appearing for the second interview it was non-custodial and therefore Appellee had no right to counsel. We find the Government's reliance on *Edwards*[37] and *Mathiason*[38] unpersuasive under the unique circumstances of this case. If the second interview was the sum of the interactions influencing Appellee, then the question before this court is far different and *Edwards* is binding precedent. But, the intervening events are facts of consequence in this case. Appellee's initial request for counsel,[39] the two attempts to seek services from the DSO,[40] the inaccurate advice provided by his chain of command,[41] and the interactions between Appellee and NCIS prior to

---

[35] *United States v. Delarosa*, 67 M.J. 318 citing Article 31(b), UCMJ, 10 U.S.C. 831(b) (2000); Mil. R. Evid. 305(b)(1), 305(c).

[36] Appellant conceded during the motion that "obviously the accused rated counsel..." R. at 89. The Government does not argue that Appellee's right to counsel did not attach in the first interrogation and therefore we do not evaluate the basis of that position.

[37] *Edwards v. Arizona*, 451 U.S. 477 (1981) (espousing the general proposition that even after requesting counsel a subject can initiate communication with authorities). The Government here suggests Appellee's initiation of the second interview proves there was no custodial interrogation.

[38] *Oregon v. Mathiason,* 429 U.S. 492 (1977). Here, the Supreme Court overturned the lower court's finding of a *Miranda* violation where the appellant went voluntarily to the police station, was told he was not under arrest and was allowed to leave.

[39] Finding of Fact (4).

[40] Finding of Fact (3).

[41] Finding of Fact (6).

and during the second interview are relevant for the military judge to consider for the issue at hand. Thus rendering her findings of fact supported by the evidence in the record and reasonable. We conclude, therefore, that the military judge's findings of fact were not clearly erroneous.

**B. The Military Judge Did Not Abuse Her Discretion When She Found Appellee's Rights Waiver Was Not Given Knowingly and Intelligently**

We next turn to the issue of whether Appellee's waiver of his right to counsel was sufficient.[42] "An involuntary statement from the accused, or any evidence derived therefrom, is inadmissible at trial."[43] "Involuntary statement" means a statement obtained in violation of the self-incrimination privilege or Due Process Clause of the Fifth Amendment.[44] The Fifth Amendment states that "[n]o Person....shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."[45] Supreme Court precedent, based on ensuring individual rights under the Fifth Amendment, contemplates a right of counsel to be present during custodial interrogations if the accused requests to have counsel there.[46] If a right to counsel exists, as conceded by the Government for the first interrogation in this case, then...a judge advocate or individual certified in accordance with Article 27(b) will be provided at no expense to the person and without regard to the person's indigency and must be present before the interrogation may proceed.[47] Furthermore, if a person "chooses to exercise the right to counsel, questioning must cease until counsel is present."[48]

It is axiomatic that the Fifth Amendment right to counsel can be waived, but it is no less obvious that any waiver of a right to counsel must be made

---

[42] Assuming, without deciding, that Appellee had a Fifth Amendment right to counsel in the first interrogation, then under the narrow facts of this case, Appellee's invocation of his Fifth Amendment right to counsel in the initial interrogation reasonably carried over, through the intervening events, to the second interview.

[43] Mil. R. Evid. 304(a).

[44] Mil. R. Evid. 304(a)(l).

[45] U.S. Const. amend. V.

[46] *Miranda v. Arizona*, 384 U.S. 436 (1966). See also Mil. R. Evid. 305(c)(2), 305(c)(4), 305(d).

[47] Mil. R. Evid. 305(d).

[48] Mil. R. Evid. 305(c)(4).

freely, knowingly, and intelligently.[49] This is a two-part test. First, the Court must determine if the waiver was voluntary.[50] The Court must next determine whether the inquiry was knowing and intelligent.[51] The knowing and intelligent analysis requires an accused to have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[52] Furthermore, myriad cases discuss that any waiver must be intelligent and understood by the accused, which depends on the particular facts and circumstances of the case.[53]

The Government asserts on appeal that the military judge failed to consider that Appellee was advised of his rights and waived them, and that his belief that counsel would only be appointed upon preferral of charges was not a mistake.[54] We disagree. As the Chief Defense Counsel of the Marine Corps has recognized, while the Marine Corps Legal Support and Administration Manual "requires the detailing of defense counsel once charges are preferred,"[55] there are a wide variety of situations in which defense counsel may be detailed prior to the preferral of charges including, "servicemembers pending investigation….by any law enforcement agency, when the detailing authority reasonably believes that such an investigation may result in court martial, nonjudicial punishment, or adverse administrative action."[56] The Government's assertions regarding the ability for an accused to obtain detailed military counsel prior to

---

[49] Mil. R. Evid. 305(e)(l).

[50] *United States v. Mott*, 72 M.J. 319 (C.A.A.F. 2013).

[51] *Id.*

[52] *Id.* at 330.

[53] See *Johnson v. Zerbst*, 304 U.S. 458, 58 S. Ct. 1019 (1938); *Berghuis v. Thompkins*, 560 U.S. 370 (2010); *United States v. Mott*, 72 M.J. 319 (C.A.A.F. 2013). Additionally, the Supreme Court has held that while a talismanic recitation of Miranda warnings are not required, law enforcement cannot link the reference to appointed counsel to a future point in time after police interrogation. *See, e.g., California v. Prysock*, 453 U.S. 355, 360 (1981).

[54] The Government relies on the specific language of Mil. R. Evid. 305 suggesting that because the second interview was non-custodial, Appellee had no Fifth Amendment right to counsel.

[55] App. Ex. XXIV at 6.

[56] App. Ex. XXIV at 9.

preferral of charges is contrary to the language of Mil. R. Evid 305(d) and exactly the same premise that the military judge identified as Appellee's source of government-induced confusion.[57]

The military judge correctly recognized that while the waiver in this case was voluntary, that did not end the analysis. As discussed above, given the totality of the circumstances, she did not err in finding that the waiver analysis for the Fifth Amendment needed to be completed.

As to that second step, whether Appellee's waiver was made knowingly and intelligently, the military judge considered the situation Appellee was faced with when making his decision to sign the rights waiver, including his desire to move the investigation forward since he was past the end of his active duty service and had already moved his family. She also properly considered the steps Appellee took prior to agreeing to the interrogation, like visiting the DSO and talking to his chain of command in an effort to exercise his rights.[58] The military judge also considered the evidence presented about the advice Appellee was given regarding whether he could be detailed military counsel and Appellee's "inaccurate belief that he could not get an attorney until charges were preferred."[59] Given this evidence, we find that the military judge, quite reasonably, found that Appellee's waiver of his right to counsel was not made knowingly or intelligently because he did not have "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."[60] Therefore, the military judge's decision to suppress Appellee's statements to NCIS was well within the range of choices reasonably arising from the facts and the law.

---

[57] Mil. R. Evid. 305(d) mandates that an attorney will be provided to an individual under these circumstances "and [the attorney] must be present before the interrogation may proceed." Any action undermining this rule, especially limitations on access to counsel, cannot be considered in compliance with the rule.

[58] R. at 89-90.

[59] R. at 89.

[60] *Mott*, 72 M.J. at 330 (further citations omitted).

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the military judge did not abuse her discretion.

The military judge's ruling is **AFFIRMED**. The case is returned to the Judge Advocate General for remand to the military judge for further proceedings consistent with this opinion.

FOR THE COURT:

MARK K. JAMISON
Clerk of Court