# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 24041**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Deshawn M. DAWSON**
Senior Airman (E-4), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary[1]

Decided 28 April 2025

———————————

*Military Judge*: Sterling C. Pendleton.

*Sentence*: Sentence adjudged 1 April 2023 by SpCM convened at Incirlik Air Base, Turkey. Sentence entered by military judge on 27 April 2023: 45 days hard labor without confinement, forfeiture of $300.00 pay per month for 2 months, reduction to E-2, and a reprimand.

*For Appellant:* Major Megan R. Crouch, USAF; Major Samantha P. Golseth, USAF; Major Frederick J. Johnson, USAF; Dwight H. Sullivan, Esquire.

*For Appellee:* Colonel Zachary T. Eytalis, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before ANNEXSTAD, DOUGLAS, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Senior Judge ANNEXSTAD and Judge DOUGLAS joined.

———————————

[1] Appellant appeals his conviction under Article 66(b)(1)(A), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866(b)(1)(A), *Manual for Courts-Martial, United States* (2024 ed.).

———————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————————

MASON, Judge:

A special court-martial, consisting of officer and enlisted members, convicted Appellant, contrary to his pleas, of one specification of assault consummated by a battery in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928.[2,3] The military judge sentenced Appellant to hard labor without confinement for 45 days, forfeiture of $300.00 pay per month for two months, reduction to the grade of E-2, and a reprimand. The convening authority took no action on the findings or the sentence.

Appellant raised eight issues on appeal which we have reordered and rephrased: (1) whether the record of trial is complete in the absence of significant portions of the audio recording of the proceedings; (2) whether Appellant was entitled to a unanimous verdict in the findings portion of the trial; (3) whether the military judge abused his discretion in denying the defense motion for a mistrial; (4) whether the military judge abused his discretion in admitting testimony in sentencing from Appellant's commander about unit impact; (5) whether the military judge abused his discretion in admitting hearsay evidence despite the witness's acknowledgment that she did not have "firsthand" knowledge of the matters; (6) whether the entry of judgment was erroneous in that it misstated the adjudged forfeitures; (7) whether the delay in post-trial processing warrants relief; and (8) whether the cumulative error doctrine warrants reversal of the findings and sentence.

Regarding issue (1), the original record of trial (ROT) submitted to the court by the Government contained a disk of audio files. However, the disk did not contain the entirety of the audio recordings for this court-martial. After receiving Appellant's assignment of errors, on 12 March 2025, the Government moved to attach multiple declarations and a disk containing the entirety of the audio recordings for this case. We granted the motion. Having reviewed the attached full audio and the originally provided recording of the proceedings in the form of a written transcript, Appellant is not prejudiced and, therefore, is

———————————————

[2] All references to the punitive articles of the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Appellant was acquitted of two specifications of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920.

not entitled to relief for the failure of the Government to initially provide the full audio recordings in the ROT.[4]

As to issue (2), Appellant is not entitled to relief. *See United States v. Anderson,* 83 M.J. 291, 302 (C.A.A.F. 2023) (holding that a military accused does not have a right to a unanimous verdict under the Sixth Amendment,[5] the Fifth Amendment's due process clause, or the Fifth Amendment's component of equal protection[6]), *cert. denied*, 144 S. Ct. 1003 (2024).

With regards to issue (6), while the written transcript shows that Appellant was sentenced to (in relevant part), "Forfeit $300[.00] of your pay for two months," the audio recording clearly reveals that the military judge announced the words, "Forfeit $300.00 of your pay per month for two months." The written transcript erroneously omitted the clause "per month" which is reflected in the audio recording. As such, the entry of judgment is correct, and Appellant is not entitled to relief.

We have carefully considered issue (8) and find it does not require discussion or relief. *See United States v. Guinn*, 81 M.J. 195, 204 (C.A.A.F. 2021) (citing *United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987)).

As to the remaining issues, as discussed below, we find no error that materially prejudiced Appellant's substantial rights and affirm the findings and sentence.

## I. BACKGROUND

On or about 21 May 2022, Appellant and three friends, EE, Senior Airman (SrA) KH, and SrA KB, went out to a club. After going to the club, the four of them drove to a diner and bowling alley complex next to the dorms on base. During the drive, Appellant and EE were talking. That conversation turned into an argument. SrA KH was driving the car and parked it when they arrived at the complex. They all exited the vehicle. Immediately after exiting the vehicle, Appellant slapped EE on the face. SrA KB saw Appellant slap EE. SrA KH heard the slap, turned and saw EE put her hand to her face, start to cry, and heard her say, "Dawson, you just slapped me." SrA KB separated Appellant

---

[4] A "record" as defined by Article 1, UCMJ, means "(A) an official written transcript, written summary, or other writing relating to the proceedings; *or* (B) an official audiotape, videotape, or similar material from which sound, or sound and visual images, depicting the proceedings may be reproduced." Article 1(14), UCMJ, 10 U.S.C. § 801(14) (emphasis added).

[5] U.S. CONST. amend. VI.

[6] U.S. CONST. amend. V.

from EE and took EE back to the dormitory to console her. SrA KH took Appellant to the diner and to the bowling alley.

During her testimony, EE stated that she and Appellant both had been drinking that night. EE stated that she did not remember most of the evening, including being slapped by Appellant, because she was heavily intoxicated.

## II. DISCUSSION

### A. Defense Motion for Mistrial

#### 1. Additional Background

In a pretrial motions hearing, trial defense counsel moved to disqualify the assistant trial counsel (ATC), Captain (Capt) MW, from this case. In making the motion, he asserted, "[i]t came to the [D]efense's attention yesterday that Captain [MW] and the accused regularly encounter each other while playing poker games at the club here on base . . . we do believe that it creates at least the appearance of impropriety . . . ." The military judge heard from both parties and questioned Capt MW. He denied the motion to disqualify assistant trial counsel concluding that Capt MW did not act in ways that are "inconsistent with the role of counsel meaning playing poker at a sponsored [Force Support Squadron (FSS)] event which presumably there were large levels of people . . . . within the context of the members assigned [t]here to Incirlik."

Following the resolution of various additional pretrial motions and the entry of pleas, the court swore in the potential court members and conducted voir dire. One of those members was Technical Sergeant (TSgt) AS. The military judge questioned the panel as a group initially. One of the questions asked was, "Does anyone know the accused in this case?" He then noted, "That's a negative response by the members." After the group was questioned by trial counsel and trial defense counsel, members were recalled for additional individual voir dire. TSgt AS was one of those members. The military judge asked a few questions related to TSgt AS's interactions with another member on the court and if she had any concerns about those interactions. She expressed that she did not have any issues with it. Senior trial counsel (STC) then had the following brief exchange with TSgt AS:

> STC: Yes, just a quick follow-up. So, the question was asked, during the general questioning about whether they know the accused in this case. Even if you don't know the accused, do you think you may have seen him around base or recognize the face?
>
> [TSgt AS:] No.
>
> STC: Okay, that's the only question I had.

The military judge then invited the senior trial defense counsel (SDC) to ask TSgt AS his questions. The following exchange occurred:

[SDC:] Just a couple of additional questions. Do you ever play poker on base?

[TSgt AS:] Yes, I do.

[SDC:] Do you recognize any of the trial counsel from those games?

[TSgt AS:] Yes, I do.

[SDC:] Okay, can you tell us who you recognize?

[TSgt AS:] The one on the end.

[SDC:] Captain [MW]? On the left side there?

[TSgt AS:] Yes.

[SDC:] How often would you say you've seen him at those games?

[TSgt AS:] Once or twice.

[SDC:] Have you ever had any conversations with him when you encounter[ed] him?

[TSgt AS:] No.

[SDC:] And since you have never had a conversation, you have never heard him say anything about his work or this case in particular?

[TSgt AS:] No.

[SDC:] And from encountering him at those games, do you think that you've formed any opinions about him or about his character? Anything like that?

[TSgt AS:] No, sir.

[SDC:] And do you think having encountered him there would change the way that you consider this case at all?

[TSgt AS:] No.

[SDC:] Do you think that you would be any more or less likely to give what he has to say more or less weight than what anyone else has to say?

[TSgt AS:] No.

[SDC:] That's all I have. Nothing further, Your Honor.

The military judge then asked two more questions:

> MJ: Do you believe that you can give this accused a full, fair and impartial hearing?
>
> [TSgt AS:] Yes, sir.
>
> MJ: Will you base your decision only on the evidence presented at trial rather than your own personal experience?
>
> [TSgt AS:] Yes, sir.

At the completion of voir dire, TSgt AS was not challenged for cause by either party. Trial defense counsel exercised a peremptory challenge on another member. TSgt AS remained on the panel after all excusals were accomplished. At the completion of the findings case and after being instructed by the military judge, the court members, including TSgt AS, deliberated and returned mixed findings. They found Appellant guilty of assault consummated by a battery in violation of Article 128, UCMJ. Appellant subsequently chose sentencing by military judge and the members were excused.

During a break in the presentation of evidence in the presentencing proceedings, counsel and the military judge had a Rule for Courts-Martial (R.C.M.) 802 session wherein the Government informed the military judge that there may have been an issue with TSgt AS. Upon returning on the record, the military judge summarized this R.C.M. 802 session and invited Capt MW to provide more context. Capt MW stated:

> Yes, Your Honor. So what we—what the [G]overnment discovered today is that [TSgt AS] was in fact at some of these poker games that—with the accused . . . and did in fact sit at a table with him approximately four days before the beginning of trial, and before the beginning of *voir dire*. So, they were observed having a conversation. It's not sure what the conversation was about, but that they did in fact communicate with one another.
>
> . . . .
>
> And also, to reiterate Your Honor, that they are in a group chat, Facebook group chat, with one another. They being [TSgt AS] and [the accused].

Trial defense counsel did not request any relief at that time. Prior to the military judge deliberating on the sentence, trial defense counsel moved for a partial mistrial as it related to the finding of guilty for assault consummated by a battery. Their basis for the requested relief was the "lack of candor discovered by trial counsel this morning by one of the panel members, [TSgt AS]."

TSgt AS was recalled and sworn in as a witness to provide testimony on this motion. She provided the following testimony:

[MJ:] Good morning [TSgt AS]. So, it has come to our attention that you may have had some interaction with the accused, specifically, at an FSS event at the club or wherever poker is played here on base. In a poker game, well first of all is that an accurate statement to your knowledge? Have you ever played poker with the accused?

[TSgt AS:] It is possible; I don't recognize everyone.

[MJ:] So, you don't recognize the accused?

[TSgt AS:] No, sir.

[MJ:] Safe to say then, I don't want to put words in your mouth, you didn't recognize him when you were individually *voir dired* at the beginning of this process?

[TSgt AS:] No.

[MJ:] Do you believe that you have ever spoken to him?

[TSgt AS:] If he's played poker, it's possible.

[MJ:] How often do you play poker?

[TSgt AS:] It's on Tuesdays and Saturdays. I try to play once a week.

[MJ:] At the risk of repeating myself, but so, the first question I asked in my questions was, did anyone know the accused. Is your testimony here today that you didn't then and do not now recognize the accused and do not know the accused, is that right?

[TSgt AS:] Yes, sir.

. . . .

[ATC:] [TSgt AS], are you part of a group chat for poker players on base?

[TSgt AS:] I am.

[ATC:] And roughly, what's the size of this group chat?

[TSgt AS:] I have never looked into it; there are seven members that I know of who put stuff in there regularly.

[ATC:] And what application and where is this group chat from or what application?

[TSgt AS:] It's Facebook messenger.

[ATC:] And do you know anyone particular in particular [sic] in that group chat?

[TSgt AS:] I know their names as they pop up, but I don't associate with them other than "hey poker is in 30."

. . . .

[ATC:] And [TSgt AS], do you specifically recognize the accused in that group chat?

[TSgt AS:] No, I have not seen his avatar.

. . . .

[MJ:] Are you able to see the names, like in the group chat, like it would be Senior Airman Dawson let's say?

[TSgt AS:] Most people have nicknames like Tilt King or All in Master.

[MJ:] Okay, so you don't remember if you've seen the accused's name?

[TSgt AS:] I do not know sir.

[MJ:] And you don't know if you'd ever seen him in the group chat?

[TSgt AS:] No, sir.

[MJ:] Okay, [D]efense?

[SDC:] No questions, Your Honor.

Following testimony from TSgt AS, the military judge also took testimony from a member of the base legal office, Capt JC. Based on that testimony, the military judge found the following facts:

> [Capt JC] told trial counsel before the panel was seated that he saw [TSgt AS] playing poker with the accused last Saturday. Specifically, [Capt JC] played poker at the same table with the accused and [TSgt AS]. In total, 6 to 8 people were seated at the

table. [Capt JC] remembers small talk but not any topics that were covered.

Furthermore, [Capt JC] stated that [TSgt AS] and the accused had been going to poker games for a while, so they likely knew each other, and he had seen them at the table maybe five times. [TSgt AS] did not recognize the accused at group voir dire or upon being questioned at the motion hearing. She did not recognize the accused from the group chat, poker, or players on base.

The military judge found that TSgt AS gave "objectively incorrect answers" in light of the fact that Capt JC "was sure that the accused and [TSgt AS] played poker together on multiple occasions as late as four days ago." However, the military judge denied the Defense's motion for a mistrial concluding that the "court here was not burdened intolerably by preventing the accused from exercising the challenge for cause . . . ."

**2. Law**

"[A] military judge's determination on a mistrial will not be reversed absent clear evidence of an abuse of discretion." *United States v. Rudometkin*, 82 M.J. 396, 400 (C.A.A.F. 2022) (citing *United States v. Diaz*, 59 M.J. 79, 90 (C.A.A.F. 2003)). A military judge abuses his discretion when:

> (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence in the record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts.

*Id.* at 401 (citations omitted).

R.C.M. 915(a), *Mistrial*, states, "[t]he military judge may, as a matter of discretion, declare a mistrial when such action is manifestly necessary in the interest of justice because of circumstances arising during the proceedings which cast substantial doubt upon the fairness of the proceedings."

R.C.M. 915, Discussion, states, in relevant part, "The power to grant a mistrial should be used with great caution under urgent circumstances, and for plain and obvious reasons."

"As a matter of due process an accused has a constitutional right, as well as a regulatory right, to a fair and impartial panel." *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017) (quoting *United State v. Wiesen*, 56 M.J. 172, 174 (C.A.A.F. 2001)).

"Responses to voir dire [examination] need not be pristine to satisfy the constitutional minimum of a fair trial . . . ." *Id.* at 322 (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) ("To invalidate the result of a . . . trial because of a juror's mistaken, though honest response to a question, is to insist on something closer to perfection than our judicial system can be expected to give.")) (additional citation omitted).

A pivotal question in evaluating whether a motion for mistrial should have been granted is if, had the member answered a "material question[ ] honestly at voir dire, defense counsel would have had a valid basis to challenge them for cause." *Id.* (citation omitted).

R.C.M. 912(f)(1)(N) states that a member shall be excused for cause whenever it appears that the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to [the] legality, fairness, and impartiality" of the court-martial. R.C.M. 912, Discussion, notes in relevant part, "[e]xamples of matters which may be grounds for challenge are that the member . . . is closely related to the accused . . . [or] has a decidedly friendly or hostile attitude toward a party . . . ."

### 3. Analysis

Appellant challenges the military judge's ruling denying the motion for mistrial. He argues first that trial counsel should have disclosed that Capt JC was aware TSgt AS was seen playing poker with Appellant to the trial defense counsel earlier so that they could ask TSgt AS more questions regarding whether or how she interacted with Appellant during these on-base poker games. Certainly, it is well-settled that trial counsel has a duty to disclose information to the Defense that would form a ground for challenge. *United States v. Shuller*, 17 C.M.R. 101, 105 (C.M.A. 1954). It also appears that trial counsel knew that Appellant and TSgt AS both attended these on-base poker games prior to the assembly of the court but did not specifically disclose this information until after the findings had been announced. However, this failure is not determinative in this case.

The record also makes very clear that trial defense counsel knew two key facts prior to the call for challenges for cause. First, the Defense knew that there were on-base poker games that Appellant participated in. This is illustrated by the trial defense counsel's motion to disqualify the assistant trial counsel. In their argument on the motion, they stated, "It came to the [D]efense's attention yesterday that Captain [MW] and the accused regularly encounter each other while playing poker games at the club here on base . . . ." This motion preceded the arrival, swearing in, and voir dire of the court members. Thus, at that time, trial defense counsel absolutely knew that their client played in these games.

10

Second, trial defense counsel knew that TSgt AS also played poker on-base. During TSgt AS's individual voir dire, trial defense counsel asked her if she played poker on-base, and she acknowledged that she did. Trial defense counsel asked if she knew trial counsel. Curiously, despite absolutely knowing that Appellant also played at these games, trial defense counsel never asked if TSgt AS interacted with Appellant. Nevertheless, a miniscule level of deduction yields the inescapable conclusion that TSgt AS and Appellant likely interacted at some point while playing in the on-base poker games. Yet, Appellant echoes his trial defense counsel's post-conviction assertion that had his counsel known about any interaction between TSgt AS and Appellant, they would have asked more questions or exercised their challenges differently. However, this assertion rings hollow in light of the facts of record.[7]

Moving past trial counsel's untimely disclosure, we focus on the pivotal question to resolve this matter—had TSgt AS answered a material question correctly at voir dire, would defense counsel have had a valid basis to challenge her for cause. *Commisso*, 76 M.J. at 322. Here, the answer is no. While the military judge found that TSgt AS was incorrect in her answer that she did not know Appellant, it does not change the fact that she did not recognize Appellant. She did not know him when first asked. She did not know him when she was recalled. The military judge did not find that she was lying when she made those statements. He did not find that she had any intent to deceive when she made those statements. Rather, the military judge found that, based on Captain JC's statement that he was sure that he had seen them interact at the poker games, that TSgt AS was objectively incorrect when she said that she did not know Appellant.

We are left to conclude based on the evidence of record and the military judge's findings that TSgt AS knew Appellant, but she did not recognize him and did not know that she knew him. The pivotal question then centers on whether there is a ground for challenge to a member who objectively knows an accused but subjectively does not realize that she knows him. We hold that under the facts of this particular case, the answer is no.

A member shall be excused when she "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to [the] legality, fairness, and impartiality" of the court-martial. R.C.M. 912(f)(1)(N). That doubt can arise from either actual bias or implied bias of the member. *See United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015) (citation omitted). Evaluating actual bias, a subjective test, TSgt AS could not be found to have had

---

[7] This conclusion is further reinforced by the fact that when presented an opportunity to ask questions of TSgt AS when she was recalled to testify on the motion for mistrial, trial defense counsel did not have a single question to ask her.

actual bias against Appellant. In her mind, she did not know Appellant. *See United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007). Likewise, TSgt AS would not be subject to excusal for cause for implied bias. An objective observer, knowing the facts and circumstances, having seen her testify, and having listened to her explanation that she did not know or recognize Appellant, would not question the procedural fairness of the trial. *See United States v. Dale*, 42 M.J. 384, 386 (C.A.A.F. 1995). Rather, an objective observer would reasonably conclude that this member is not closely related to Appellant nor has she "a decidedly friendly or hostile attitude toward [either] party" in light of the fact that she did not even recognize Appellant. R.C.M. 912, Discussion.

Therefore, TSgt AS would not have been subject to excusal upon a challenge for cause. Because she was not, the military judge's denial of the motion for mistrial was not a clear abuse of discretion, and Appellant is not entitled to relief based on that denial.

## B. Sentencing Evidence

### 1. Additional Background

Following the announcement of findings, Appellant chose to be sentenced by military judge alone and the members were excused. During the presentencing proceedings, the Government sought to introduce testimony from Appellant's squadron commander, Lieutenant Colonel (Lt Col) AG. Trial defense counsel objected to Lt Col AG's testimony arguing that it was improper aggravation evidence. Specifically, trial defense counsel sought to exclude testimony from Lt Col AG that Appellant, a member of the security forces squadron, was removed from the flight and put on the do-not-arm list, had to go to the Office of Special Investigations to be interviewed, and that EE was also removed from the flight. Appellant argued that those are decisions of the command and not matters in aggravation. The military judge overruled the objection, and the Government called Lt Col AG to testify.

Lt Col AG testified that she knew Appellant from her unit. She interacted with him through flight visits, guard mounts, and welfare checks. Once the allegations were brought to her attention, the interactions she had with Appellant became more frequent. She testified about how Appellant was put into do-not-arm status so he could not perform all the duties and functions that he was assigned to do. She stated that because of that, the flight was "just down a member until [they] get a backfill to replace the member." As to the impact on the unit, Lt Col AG stated, "[T]hat's one less member that they can use to cover that. So it affects the rest of the flight in post rotations, possible . . . days off that they get or those types of things."

Trial counsel later asked Lt Col AG about Appellant's attitude and demeanor in the section to which he had been reassigned. Lt Col AG started to

answer but did not finish before trial defense counsel objected to hearsay. The military judge responded, "I don't know what the answer is going to be so at this point overruled." The following testimony was then presented:

> [Lt Col AG:] So observed, I see him in his details, working those details, and I'm not sure you know what the objection is, but it was brought to me on attitude, while he's been working those details on at least two occasions, where he is asked to do something and he drags his feet or he doesn't do it. Which then the detail that continues that trend and so that's been an issue since he's been in the S-4 section.

> [TC:] And so, you mentioned the sort of the attitude, can you describe that a little bit more?

> [Lt Col AG:] Yes. So, what was brought to me, again I didn't see it firsthand, but what was brought to me by senior [noncommissioned officers] was they asked him to do something and he doesn't get it done. They ask him again to do it and he has kind of a flippant attitude about going and getting it done, like they are bothering him or asking him to do something that's unreasonable.

> . . . .

> [TC:] So [Lt Col AG], you mentioned just right now that it kind of permeates throughout the S-4 section in the flight, what did you mean by that?

> [Lt Col AG:] Yes. So they all watch each other and they all feed off of each other quite frankly, and so if one of them is not going to do it others are going to follow suit with that, and that is something that's been brought to me on at least two occasions with [the accused] specifically.

Trial defense counsel proceeded to cross-examine Lt Col AG. She agreed that she did not personally observe some of the things that she mentioned about the new duties Appellant had been performing. She further agreed that she was not aware of any flight level infractions by Appellant. She also testified in relation to Appellant's disarming that he was easily replaceable in that there are plenty of other Airmen in the unit but that the decision to bring him and EE down off the arming list meant that the unit had 366 vice 368 Airmen able to perform full duties.

### 2. Law

We review a military judge's decision to admit sentencing evidence for abuse of discretion. *United States v. Barker*, 77 M.J. 377, 383 (C.A.A.F. 2018)

(citation omitted). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

> A military judge abuses his or her discretion when: (1) the military judge predicates a ruling on findings of fact that are not supported by the evidence of record; (2) the military judge uses incorrect legal principles; (3) the military judge applies correct legal principles to the facts in a way that is clearly unreasonable; or (4) the military judge fails to consider important facts.

*Rudometkin*, 82 M.J. at 401 (citations omitted).

> When there is error in the admission of sentencing evidence, the test for prejudice "is whether the error substantially influenced the adjudged sentence." *United States v. Sanders*, 67 M.J. 344, 346 (C.A.A.F. 2009) (citation omitted). When determining whether an error had a substantial influence on a sentence, this Court considers the following four factors: "(1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question." *United States v. Bowen*, 76 M.J. 83, 89 (C.A.A.F. 2017) (internal quotation marks omitted) (quoting *United States v. Kerr*, 51 M.J. 401, 405 (C.A.A.F. 1999)). An error is more likely to be prejudicial if the fact was not already obvious from the other evidence presented at trial and would have provided new ammunition against an appellant. *United States v. Harrow*, 65 M.J. 190, 200 (C.A.A.F. 2007).

*Barker*, 77 M.J. at 384.

### 3. Analysis

Appellant argues first that the military judge erred by permitting Lt Col AG to testify about adverse unit impact due to the allegations against him particularly because he was acquitted of two of the three allegations against him. He argues second that the military judge erred by permitting Lt Col AG to echo disparaging hearsay statements in her testimony over trial defense counsel's objection.

We need not decide whether any of the challenged evidence here was erroneously admitted as both challenges can easily be resolved by analyzing prejudice. In its entirety and in component pieces, the testimony of Lt Col AG about unit impact and attitude concerns brought to her that she did not see firsthand

are of very low probative value. Trial defense counsel did an excellent job of highlighting Lt Col AG's lack of personal knowledge as to any attitude problems. Moreover, the quality and materiality of this evidence was very low. After the cross-examination, it was quite clear that removal of Appellant from his full duties had virtually no impact on this large squadron that routinely absorbs Airmen not being able to arm up. Thus, evaluating the *Barker* factors, we are firmly convinced that, if this testimony was not completely disregarded by the military judge sitting as sentencing authority, it surely did not substantially influence the adjudged sentence in this case that included neither confinement nor a punitive discharge. Hence, Appellant is not entitled to relief for the admission of Lt Col AG's testimony.

## C. Post-Trial Delay

### 1. Additional Background

On 23 December 2022, Congress amended Articles 66 and 69, UCMJ, 10 U.S.C. §§ 866, 869.[8] As amended, Article 66(b)(1)(A), UCMJ, 10 U.S.C. § 866(b)(1)(A), expanded the jurisdiction of the service CCAs to any judgment of a special or general court-martial, irrespective of sentence, that included a finding of guilty.

Appellant was sentenced on 1 April 2023. Appellant's sentence did not meet the jurisdictional requirements for automatic appeal to this court under Article 66(b)(3), UCMJ, 10 U.S.C. § 866(b)(3). On 11 September 2023, Appellant received a notice from Headquarters Third Air Force informing him of his right to appeal his conviction pursuant to Article 66(b)(1)(A), UCMJ. On 25 September 2023, Appellant filed with this court a timely notice of direct appeal pursuant to Article 66(b)(1)(A), UCMJ, and this court docketed his case on 4 October 2023. The court suspended Appellant's obligation to file his brief pending completion of the verbatim transcript for this case. The court received the certified verbatim transcript on 9 August 2024. After the transcript was delivered to this court, Appellant moved for 3 enlargements of time. On 28 January 2025, Appellant filed his assignments of error brief with the court. On 12 March 2025, the Government filed their answer brief. Appellant then filed a reply brief on 19 March 2025.

---

[8] National Defense Authorization Act for Fiscal Year 2023, Pub. L. No. 117-263, § 544, 136 Stat. 2395, 2582–84 (23 Dec. 2022).

On 1 April 2025, Appellant moved to cite supplemental authority. We granted that motion. In the motion, he states, "Appellant does not argue that unreasonable post-trial delay in his case constitutes a due process violation."[9]

**2. Law**

We review the question of whether an appellant's due process rights are violated because of post-trial delay de novo. *United States v. Livak*, 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020) (citation omitted).

In *United States v. Moreno,* the United States Court of Appeals for the Armed Forces (CAAF) adopted thresholds for facially unreasonable delay during three particular segments of the post-trial and appellate process. 63 M.J. 129, 136 (C.A.A.F. 2006) (citation omitted). Specifically, our superior court established a presumption of facially unreasonable delay where: (1) the convening authority did not take action within 120 days of the completion of trial, (2) the record was not docketed with the CCA within 30 days of the convening authority's action, or (3) the CCA did not render a decision within 18 months of docketing. *Id.* at 142.

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of an appellant's due process right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted).

Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

A Court of Criminal Appeals may provide appropriate relief for excessive post-trial delay. Article 66(d)(2), UCMJ, 10 U.S.C. §866(d)(2). Appropriate relief is not synonymous with meaningful relief. *United States v. Valentin-Andino*, __ M.J. __, No. 24-0208, 2025 CAAF LEXIS 248, at *9 (C.A.A.F. 31 Mar. 2025). "[A]lthough it is within a Court of Criminal Appeal's discretion to place

---

[9] Appellant's supplemental authority cited was *United States v. Valentin-Andino*, __ M.J. __, No. 24-0208, 2025 CAAF LEXIS 248 (C.A.A.F. 31 Mar. 2025).

its reasoning about Article 66(d)(2)[, UCMJ,] relief on the record, it is not required to do so." *Id.* (citing *United States v. Winckelmann*, 73 M.J. 11, 16 (C.A.A.F. 2013)).

### 3. Analysis

We begin our analysis with the assumption that while the post-trial procedures of Appellant's appeal are different than the appeal procedures in place at the time *Moreno* and its progeny were decided, that the right to speedy appellate review continues under these new procedures. We also determine that the 18-month *Moreno* standard for facially unreasonable delay from docketing with this court to appellate decision still applies to determine if a facially unreasonable post-trial delay occurred. Therefore, since a decision by this court on Appellant's case was not rendered within 18 months of 1 April 2023, a facially unreasonable post-trial delay has been established in Appellant's case.

Finding a facially unreasonable post-trial delay, we now assess whether a due process violation occurred. Appellant is not claiming a due process violation in his case. After considering the four *Barker* factors we agree and conclude that no due process violation occurred. Thus, no relief is warranted. We do not find the delay in this case so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. Finally, recognizing our authority under Article 66(d)(2), UCMJ, we have also considered whether relief for excessive post-trial delay is appropriate even in the absence of a due process violation. We conclude it is not.

### III. CONCLUSION

As entered, the findings are correct in law and the sentence is correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court